Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,*
*Oasis Legal Finance Operating Company,*
*LLC, Oasis Legal Finance Holding*
*Company, LLC, and OFLC, LLC*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 2:23-cv-00581-JXN-AME ) |
| v. | ) Motion Day: June 5, 2023 ) |
| OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY, LLC; OASIS FINANCIAL OPERATING COMPANY, LLC, and JOHN DOES 1 to 10, | ) ) **NOTICE OF MOTION TO** ) **DISMISS PLAINTIFF'S CLASS** ) **ACTION COMPLAINT** ) ) ) ) ) |
| Defendants. | ) |

**TO:**   Philip Stern, Esq.
KimLawFirm LLC
411 Hackansack Avenue, Suite 701
Hackensack, NJ 07601
pstern@kimlf.com

**PLEASE TAKE NOTICE** that on June 5, 2023, or as soon thereafter as counsel may be heard, Defendants OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL ("Oasis Financial"), OASIS LEGAL FINANCE OPERATING COMPANY, LLC (incorrectly named as "Oasis Financial Operating Company, LLC") ("Oasis OpCo"), OASIS LEGAL FINANCE HOLDING COMPANY, LLC (incorrectly named as "Oasis Financial Holding Company, LLC") ("Oasis HoldCo"), and OFLC, LLC ("OFLC") (collectively, the "Oasis Parties"), by and through their attorneys, Barnes & Thornburg LLP, will respectfully move this Court for an Order dismissing Plaintiff's Class Action Complaint.

**PLEASE TAKE FURTHER NOTICE** that, in support of this motion, the Oasis Parties will rely on the accompanying memorandum of law and the Declaration of David Winkiel, with exhibits.

**PLEASE TAKE FURTHER NOTICE** that a Proposed Order is included herewith.

**PLEASE TAKE FURTHER NOTICE** that this matter has not yet been assigned a discovery end date.

DMS 26279844.1

Dated:  May 8, 2023                    Respectfully submitted,

                                       */s/ Kaitlyn E. Stone*
                                       Kaitlyn E. Stone
                                       BARNES & THORNBURG LLP
                                       67 East Park Place, Suite 500
                                       Morristown, NJ 07960
                                       Tel. (973) 755-6101
                                       Fax. (973) 775-6102
                                       kaitlyn.stone@btlaw.com

                                       Christine E. Skoczylas
                                       (*Admitted Pro Hac Vice*)
                                       ARDC No. 6293811
                                       BARNES & THORNBURG LLP
                                       One North Wacker Drive, Suite 4400
                                       Tel.  (312) 214-5613
                                       Fax.  (312) 759-5646
                                       Christine.skoczylas@btlaw.com

                                       *Attorneys for Oasis Legal Finance, LLC,*
                                       *Oasis Legal Finance Operating*
                                       *Company, LLC, Oasis Legal Finance*
                                       *Holding Company, LLC, and OFLC,*
                                       *LLC*

DMS 26279844.1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.


/s/ Kaitlyn E. Stone

Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,*
*Oasis Legal Finance Operating*
*Company, LLC, Oasis Legal Finance*
*Holding Company, LLC, and OFLC,*
*LLC*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY, LLC; OASIS FINANCIAL OPERATING COMPANY, LLC, and JOHN DOES 1 to 10, )<br><br>Defendants. ) | No.: 2:23-cv-00581-JXN-AME<br><br>Motion Day: March 20, 2023<br><br>**NOTICE OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

**TO:** Yoongmoon Kim
Kim Law Firm LLC
411 Hackansack Avenue, Suite 701
Hackensack, NJ 07601
ykim@kimlf.com

PLEASE TAKE NOTICE that on March 20, 2023, or as soon thereafter as counsel may be heard, Defendants OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL ("Oasis Financial"), OASIS LEGAL FINANCE OPERATING COMPANY, LLC (incorrectly named as "Oasis Financial Operating Company, LLC") ("Oasis OpCo"), OASIS LEGAL FINANCE HOLDING COMPANY, LLC (incorrectly named as "Oasis Financial Holding Company, LLC") ("Oasis HoldCo"), and OFLC, LLC ("OFLC") (collectively, the "Oasis Parties"), by and through their attorneys, Barnes & Thornburg LLP, will respectfully move this Court for an Order dismissing Plaintiff's Class Action Complaint.

PLEASE TAKE FURTHER NOTICE that, in support of this motion, the Oasis Parties will rely on the accompanying memorandum of law and the Declaration of David Winkiel, with exhibits.

PLEASE TAKE FURTHER NOTICE that a Proposed Order is included herewith.

PLEASE TAKE FURTHER NOTICE that this matter has not yet been assigned a discovery end date.

Respectfully submitted,

/s/ Kaitlyn E. Stone
Kaitlyn E. Stone
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

Christine E. Skoczylas
(Admitted Pro Hac Vice)
ARDC No. 6293811
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Tel.  (312) 214-5613
Fax.  (312) 759-5646
Christine.skoczylas@btlaw.com

Attorneys for Oasis Legal Finance, LLC,
Oasis Legal Finance Operating
Company, LLC, Oasis Legal Finance
Holding Company, LLC, and OFLC,
LLC

Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,*
*Oasis Legal Finance Operating*
*Company, LLC, Oasis Legal Finance*
*Holding Company, LLC, and OFLC,*
*LLC*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 2:23-cv-00581-JXN-AME |
| OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY, LLC; OASIS FINANCIAL OPERATING COMPANY, LLC, and JOHN DOES 1 to 10, | ) ) ) ) ) ) ) ) ) | Motion Day: March 20, 2023 |
| Defendants. | ) | |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

RELEVANT FACTUAL BACKGROUND.............................................................2

LEGAL STANDARD...............................................................................................4

ARGUMENT ............................................................................................................5

I.     The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6)
Because the Circuit Court of Cook County, Illinois, Is the
Exclusive Forum For Plaintiff's Claims....................................................5

     A.     The Forum-Selection Clause Is Mandatory. ...................................7

     B.     Federal Law Governs This Court's Analysis of Whether the
Agreements' Mandatory Forum-Selection Clause Is
Enforceable......................................................................................8

     C.     The Agreements' Forum-Selection Clause Should Be
Enforced Absent Proof by Plaintiff that Enforcement Would
Be Unreasonable. ............................................................................9

          1.     The Complaint Does Not Allege Fraud or Overreach
in Connection with the Forum-Selection Clause.................10

          2.     Plaintiff Cannot Show that Enforcement of the
Forum-Selection Clause Would Contravene a Strong
Public Policy of the Forum State. .......................................11

          3.     The Circuit Court of Cook County, Illinois, Is Not
"So Gravely Difficult and Inconvenient" that It Would
Deny Plaintiff Her Day in Court..........................................12

II.     The Agreements' Alleged Unenforceability Does Not Impact the
Enforceability of the Forum-Selection Clause. ........................................14

CONCLUSION.......................................................................................................15

CERTIFICATE OF SERVICE ..............................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................4

*Atlantic Marine Construction Company, Inc. v. United States District Court*
   *for the Western District of Texas*,
   571 U.S. 49 (2013).......................................................................6, 9, 13

*Automotive Finance Corporation v. DZ Motors, LLC*,
   No. CIV.A. 16-7955, 2017 WL 3176275 (D.N.J. July 26, 2017) ......................10

*Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*,
   98 F. Supp. 2d 560 (D.N.J. 2000).......................................................12

*Caspi v. Microsoft Network, L.L.C.*,
   323 N.J. Super. 118 (App. Div. 1999)..................................................11

*Chisso America, Inc. v. M/V Haijin Osaka*,
   307 F. Supp. 2d 621 (D.N.J. 2003)........................................................9

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
   775 F.3d 41 (1st Cir. 2014)..................................................................7

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
   709 F.2d 190 (3d Cir. 1983) .......................................................10, 13

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ..............................................................10

*Hoffer v. InfoSpace.com, Inc.*,
   102 F. Supp. 2d 556 (D.N.J. 2000)......................................................13

*Hoffman v. Time Warner Cable Inc.*,
   No. CIV.A. 12-00978, 2013 WL 2460121 (D.N.J. June 6, 2013) ......................5

*Integrated Health Resources, LLC v. Rossi Psychological Group, P.A.*,
   537 F. Supp. 2d 672 (D.N.J. 2008)........................................................6

*Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur*
  *Industrieversicherungen*,
  188 F. Supp. 2d 454 (D.N.J. 2001) ..........................................................9, 11, 12

*Largoza v. FKM Real Est. Holdings, Inc.*,
  474 N.J. Super. 61 (App. Div. 2022) ................................................................14

*Mathews v. Rescuecom Corporation*,
  No. CIV.A. 05-4834, 2006 WL 414096 (D.N.J. Feb. 16, 2006) ......................14

*In re McGraw-Hill Global Education Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) .................................................................................8

*MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A.*,
  65 F. App'x 844 (3d Cir. 2003) .........................................................................10

*Montero v. Brickman Group, Ltd.*,
  No. CIV.A. 12-2535, 2012 WL 3757499 (D.N.J. Aug. 28, 2012) ......................4

*Nitterhouse Concrete Products, Inc. v. Dobco Group, Inc.*,
  305 F. Supp. 3d 580 (D.N.J. 2018) .....................................................................7

*In re NorVergence, Inc.*,
  424 B.R. 663 (Bankr. D.N.J. 2010) ...................................................................10

*Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .............................................................................5

*Podesta v. Hanzel*,
  684 F. App'x 213 (3d Cir. 2017) .........................................................................6

*Radware, Inc. v. U.S. TelePacific Corporation*,
  No. CIV.A. 18-17266, 2019 WL 13202075 (D.N.J. June 11, 2019) ................14

*Salovaara v. Jackson National Life Insurance Company*,
  246 F.3d 289 (3d Cir. 2001) ...............................................................................6

*Smith v. Aegon Companies Pension Plan*,
  769 F.3d 922 (6th Cir. 2014) ..............................................................................7

*Union Electric Company v. Energy Insurance Mutual, Ltd.*,
  689 F.3d 968 (8th Cir. 2012) ..............................................................................7

*Union Steel America Company v. M/V Sanko Spruce*,
   14 F. Supp. 2d 682 (D.N.J. 1998) ........................................................... 8

*Wilfred MacDonald Inc. v. Cushman Inc.*,
   256 N.J. Super. 58 (App. Div. 1992) ..................................................... 13

*Zydus Worldwide DMCC v. Teva API Inc.*,
   461 F. Supp. 3d 119 (D.N.J. 2020) ......................................................... 8

## Statutes

New Jersey Consumer Finance Licensing Act (N.J.S.A. 17:11C-1) ........................ 1

New Jersey Consumer Fraud Act (N.J.S.A. 56:8-19) ..................................... 1, 9, 14

New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act
   (N.J.S.A. 56:12-14) ................................................................................. 1

## Other Authorities

Federal Rule of Civil Procedure 12(b)(3) ................................................................ 6

Federal Rule of Civil Procedure 12(b)(6) ....................................................... *passim*

Defendants, OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL ("Oasis Financial"), OASIS LEGAL FINANCE OPERATING COMPANY, LLC (incorrectly named as "Oasis Financial Operating Company, LLC") ("Oasis OpCo"), OASIS LEGAL FINANCE HOLDING COMPANY, LLC (incorrectly named as "Oasis Financial Holding Company, LLC") ("Oasis HoldCo"), and OFLC, LLC ("OFLC") (collectively, the "Oasis Parties"), by and through their attorneys, Barnes & Thornburg LLP, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the Class Action Complaint ("Complaint") brought by Plaintiff, Shana Gafner, and in support thereof, state as follows:

## INTRODUCTION

Plaintiff filed her Class Action Complaint in the Superior Court of New Jersey, Law Division, Hudson County, against the Oasis Parties on January 4, 2023. ECF Doc. 1-1. Plaintiff alleges that she and the putative class members all entered into unenforceable "nonrecourse cash advance" loans with "Oasis" (the "Agreements") in violation of New Jersey's Consumer Fraud Act (N.J.S.A. 56:8-19), Consumer Finance Licensing Act (N.J.S.A. 17:11C-1), and Truth-in-Consumer Contract, Warranty, and Notice Act (N.J.S.A. 56:12-14). ECF Doc. 1-1, ¶¶ 1-5. Plaintiff now seeks to prevent the Oasis Parties from enforcing the Agreements and to obtain other legal, declaratory, and injunctive relief on behalf of herself and a

class of New Jersey residents who contracted with "Oasis." *Id.* at ¶¶ 27-29. The Oasis Parties removed the action to this Court on February 2, 2023. ECF Doc. 1.

Plaintiff contractually agreed that any claims arising out of or relating to her Agreements would be resolved exclusively by the Circuit Court of Cook County, Illinois. This Court should hold Plaintiff to her bargain and dismiss the Complaint pursuant to Rule 12(b)(6), without prejudice, to allow Plaintiff to file her claims in Cook County, in compliance with the Agreements' exclusive venue provision.

## RELEVANT FACTUAL BACKGROUND

Although not clearly alleged in the Complaint, Plaintiff entered into three Nonrecourse Purchase Agreements with Oasis Financial. ECF Doc. 1-1, ¶¶ 14-16; *see also* Declaration of David Winkiel ("Winkiel Decl."), ¶ 4, Exs. A-C.[1] Pursuant to the Agreements, Oasis Financial provided Plaintiff with funding while she pursued claims against a third party or parties in exchange for a contingent ownership interest in a portion of the potential proceeds, if any, that Plaintiff received in her lawsuit. Winkiel Decl., Exs. A-C, ¶ 2. Had Plaintiff recovered nothing in her underlying personal injury case, then she would have owed Oasis Financial nothing under the Agreements. *Id.*

---

[1] As set forth in Defendants Oasis Legal Finance Operating Company, LLC, Oasis Legal Finance Holding Company, LLC, and OFLC, LLC's Motion To Dismiss and Memorandum of Law in support, filed contemporaneously herewith, Oasis Financial is the only Oasis entity that is a party of Plaintiff's Agreements.

All three Agreements expressly state, in all capital letters and in boldfaced type, that Oasis Financial recommended that Plaintiff retain an attorney in connection with the execution of the Agreement:

> 6.11    LEGAL REPRESENTATION.   SELLER (SHANA GAFNER) UNDERSTANDS AND ACKNOWLEDGES THAT:   (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (SHANA GAFNER) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (SHANA GAFNER) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (SHANA GAFNER'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

*Id.* at ¶ 6.11 (emphasis in original). Plaintiff was, in fact, represented by counsel at the time she signed the Agreements, and her attorney signed separate "Attorney Acknowledgement" of Plaintiff's Irrevocable Letter of Direction. *Id.* at p. 11 of 15.

The Agreements are governed by New Jersey law:

> 6.5    GOVERNING LAW AND FORUM.  THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY.

*Id.* at ¶ 6.5 (emphasis in original). Moreover, the Agreement provides, in all capital letters and boldfaced type, that the Circuit Court of Cook County, Illinois, has exclusive jurisdiction over any lawsuits, such as the present action, that arise out of or relate to the Agreements:

> THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

*Id.* (emphasis in original).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court must accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff, that tenet "is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy a plaintiff's pleading burden. *Id.*; *see also Montero v. Brickman Grp., Ltd.*, No. CIV.A. 12-2535, 2012 WL 3757499, at *1 (D.N.J. Aug. 28, 2012) (on a motion to dismiss, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted). A complaint that "tenders naked assertion[s] devoid of further factual enhancement" must fail. *Iqbal*, 556 U.S. at 678. (internal quotations omitted) (alteration in original).

Although Plaintiff neglected to attach her Nonrecourse Purchase Agreements to her Complaint, the Court may properly consider them for the purpose of this Motion To Dismiss because they are incorporated into the Complaint by reference. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (in ruling on a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); *see also Hoffman v. Time Warner Cable Inc.*, No. CIV.A. 12-00978, 2013 WL 2460121, at *4 (D.N.J. June 6, 2013) (considering Residential Subscriber Agreement in ruling on motion to dismiss because it was "integral" to plaintiff's breach of contract claim). The Oasis Parties have tendered to this Court for its consideration the three authenticated Nonrecourse Purchase Agreements that Plaintiff entered into with Oasis Financial. *See* Winkiel Decl., ¶ 4, Exs. A-C.

## ARGUMENT

### I.   The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because the Circuit Court of Cook County, Illinois, Is the Exclusive Forum For Plaintiff's Claims.

Plaintiff improperly commenced the instant action against the Oasis Parties in New Jersey, in contravention of the Agreements' presumptively valid, enforceable, and mandatory forum-selection clause, which dictates that Plaintiff bring any and all claims arising out of the Agreements in Cook County, Illinois. Because Plaintiff filed

her claims in an improper forum, her claims should be dismissed pursuant to Rule 12(b)(6).

The United States Supreme Court in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, stated that a forum-selection clause may be enforced through the doctrine of *forum non conveniens*, rather than through a Rule 12(b)(3) motion for improper venue. 571 U.S. 49, 59-60 (2013). The Court declined, however, to consider whether a defendant could obtain the dismissal of a case filed in the improper forum under Rule 12(b)(6). *Id.* at 61. Subsequently, based on the gap left open by *Atlantic Marine*, the Third Circuit has upheld the enforcement of a forum-selection clause through a Rule 12(b)(6) motion. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297-301 (3d Cir. 2001); *see also Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (citing *Atlantic Marine* and *Salovaara* for the proposition that "a Rule 12(b)(6) dismissal is also an acceptable means of enforcing such a clause when, as here, the clause allows for suit in either a state or federal forum"); *Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.*, 537 F. Supp. 2d 672, 674 (D.N.J. 2008) ("The Third Circuit has held that dismissal under Fed.R.Civ.P. 12(b)(6) is proper

where a forum selection clause designates another court as the exclusive venue for litigation.").[2]

Because Plaintiff commenced this action in an improper forum, this Court should dismiss the Complaint without prejudice, permitting Plaintiff to refile her claims in the proper forum, the Circuit Court of Cook County, Illinois.

### A.    The Forum-Selection Clause Is Mandatory.

Courts in the Third Circuit recognize two types of forum-selection clauses: mandatory and permissive. "A forum selection clause is enforceable only if it is mandatory—providing the sole forum available for resolution of the claims, rather than permissive—providing one of many possible fora." *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018). "To determine whether a provision is mandatory, 'a court's paramount consideration is the intent of the parties,' guided by the 'plain language of the agreement.'" *Id.* (citing *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85 (3rd Cir. 2006)).

Here, the Agreements' forum-selection clause is mandatory, dictating that the Circuit Court of Cook County, Illinois is the "exclusive" jurisdiction in which

---

[2] Other Circuits have similarly recognized the gap in *Atlantic Marine* and have endorsed using Rule 12(b)(6) as a means for enforcing forum-selection clauses. *See, e.g.*, *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014); *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 933-34 (6th Cir. 2014); *Union Elec. Co. v. Energy Ins. Mut., Ltd.*, 689 F.3d 968, 971 n.2 (8th Cir. 2012).

disputes arising out of the Agreement may be brought. Winkiel Decl., Exs. A-C, ¶ 6.5. Plaintiff also "agree[d] not to commence any such lawsuit . . . ***except*** in the Circuit Court of Cook County, Illinois." *Id.* (emphasis added). Thus, the Circuit Court of Cook County, Illinois, is the exclusive forum for litigating Plaintiff's claims. *See, e.g.*, *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 687 (D.N.J. 1998) (finding that a forum-selection clause was mandatory where it stated that any dispute "***shall*** be decided" in the specified forum) (emphasis in original).

### B. Federal Law Governs This Court's Analysis of Whether the Agreements' Mandatory Forum-Selection Clause Is Enforceable.

"Federal law controls the question of whether to enforce a forum selection clause." *In re Mcgraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018); *see also Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 129-30 (D.N.J. 2020) ("In a federal diversity case, like this one, federal law governs enforceability, or the 'effect to be given a contractual forum selection clause.'") (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)). Accordingly, as a federal court exercising diversity jurisdiction under the Class Action Fairness Act, this Court must apply federal law to determine the enforceability of the Agreements' forum-selection clause.

### C. The Agreements' Forum-Selection Clause Should Be Enforced Absent Proof by Plaintiff that Enforcement Would Be Unreasonable.

As the Supreme Court explained in *Atlantic Marine*, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," and "such cases will not be common." *Atlantic Marine*, 571 U.S. at 63-64 (bracketing in original) (citation omitted). As the party opposing the enforcement of the Agreements' forum-selection clause, Plaintiff bears the heavy burden of showing that dismissal is not warranted here. *Chisso America, Inc. v. M/V Hanjin Osaka*, 307 F. Supp. 2d 621, 624 (D.N.J. 2003). As set forth below, Plaintiff cannot meet that burden.

Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454, 458 (D.N.J. 2001), aff'd, 36 F. App'x 491 (3d Cir. 2002) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). Courts in the Third Circuit consider three factors when evaluating whether a forum-selection clause is enforceable: whether "(1) the clause was invalid for such reasons as fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be

unreasonable and unjust and that it would deprive the party of its day in court." *Id.*;
*see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d
Cir. 1983), overruled on other grounds by *Lauro Lines s.r.l. v. Chasser*, 490 U.S.
495 (1989). Each of these three factors weighs strongly in favor of the enforcement
of the Agreements' forum-selection clause and dismissal of the Complaint.

### 1. The Complaint Does Not Allege Fraud or Overreach in Connection with the Forum-Selection Clause.

First, although the Complaint alleges violations of the New Jersey Consumer
Fraud Act, it does not allege fraud in connection with the forum-selection clause
itself or any overreach in any form. But "general allegation of fraud in connection
with the contract is not sufficient to invalidate a forum selection clause." *In re
NorVergence, Inc.*, 424 B.R. 663, 710 (Bankr. D.N.J. 2010). "Rather, the proper
inquiry is whether the forum selection clause is the result of 'fraud in the inducement
of the . . . clause itself.'" *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*,
65 F. App'x 844, 847 (3d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin
Mfg. Co.*, 388 U.S. 395, 403–04 (1967)). Such allegations of fraud must be pled with
specificity; conclusory allegations that a defendant's conduct was fraudulent and
deceptive do not suffice. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.
2007); *Auto. Fin. Corp. v. DZ Motors, LLC*, No. CIV 16-7955, 2017 WL 3176275,
at *3 (D.N.J. July 26, 2017).

Here, Plaintiff has not even made conclusory allegations about any fraudulent conduct in connection with the Agreements' forum-selection clause. Nor has Plaintiff pled any facts that would support the conclusion that she—a party represented by her own counsel when she executed the Agreements—was induced to enter into the Agreements under duress or through some other unconscionable means. Plaintiff therefore fails the first prong of the test.

> **2.   Plaintiff Cannot Show that Enforcement of the Forum-Selection Clause Would Contravene a Strong Public Policy of the Forum State.**

Second, the enforcement of the Agreements' forum-selection clause does not contravene New Jersey public policy. None of the statutes under which Plaintiff brings suit grants Plaintiff with an unconditional right to have claims litigated exclusively in New Jersey. In fact, New Jersey courts have specifically held that forum-selection clauses do not violate New Jersey's interest in consumer fraud protection. *See, e.g.*, *Caspi v. Microsoft Network, L.L.C.*, 323 N.J. Super. 118, 124 (App. Div. 1999). And nothing in Plaintiff's Complaint even hints at a New Jersey public policy that would bar the enforceability of the Agreements' forum-selection clause. *See Intermetals Corp.*, 188 F. Supp. 2d. at 458 ("There is nothing in the record to suggest that . . . enforcement of the [forum selection] clause would contravene a strong public policy of this Court."). Indeed, New Jersey courts routinely enforce forum-selection clauses and generally do not find them to be

against public policy except for in the very limited circumstance of Franchise Act violations, which are not alleged here. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 566 (D.N.J. 2000) (declining to apply Franchise Act exception to forum-selection clause analysis in the absence of a valid claim for violation of the Franchise Act).

In the absence of any factual allegations that would support a finding that the Agreements' forum-selection clause contravenes New Jersey public policy, Plaintiff cannot satisfy the second prong of the test.

### 3. The Circuit Court of Cook County, Illinois, Is Not "So Gravely Difficult and Inconvenient" that It Would Deny Plaintiff Her Day in Court.

Third, Plaintiff cannot reasonably claim that she would not be able to have her day in court if this case is litigated in Cook County, Illinois, rather than in Hudson County, New Jersey. To satisfy the third prong of the test, a plaintiff must demonstrate that "enforcement of the clause [to be] so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court." *Intermetals Corp.*, 188 F. Supp. 2d at 458. This third prong carries a "high standard," and courts in this District have found that the prong does not preclude enforcement of forum-selection clauses, even where the clause designates a foreign country as the proper forum for litigation. *Id.* at 460. In fact, Third Circuit and New Jersey courts routinely enforce forum-selection clauses that require

litigation outside of the state, finding that such clauses are not unjust or unreasonable. *See, e.g.*, *id.* (upholding forum selection clause selecting Austria as the venue); *Coastal Steel Corp.*, 709 F.2d at 203-04 (upholding forum selection clause selecting England as the venue); *Hoffer v. InfoSpace.com, In*c., 102 F. Supp. 2d 556, 566-69 (D.N.J. 2000) (upholding forum selection clause selecting Washington as the venue); *Wilfred MacDonald Inc. v. Cushman Inc.*, 256 N.J. Super. 58, 65-66 (App. Div. 1992) (upholding forum selection clause selecting Nebraska as the venue).

Here, Plaintiff does not—and cannot—suggest that litigating this case in Cook County, Illinois, would be tantamount to depriving her of access to the courts. Plaintiff therefore fails the third and final prong of the test. The Agreements' forum-selection clause should be enforced, and all claims against Oasis should be dismissed without prejudice, permitting Plaintiff to refile her claims, on an individual basis, in the Circuit Court of Cook County, Illinois.[3]

---

[3] Plaintiff's Complaint would also be subject to dismissal under the doctrine of *forum non conveniens*. Because the Agreements contain a valid and enforceable mandatory forum-selection clause, Plaintiff's choice of forum is given no weight, and private interest factors warrant no attention. *Atlantic Marine*, 571 U.S. at 63-64. Additionally, the public interest factors, which will "rarely defeat" the enforcement of a forum-selection clause, *id.* at 64, do not outweigh the strong presumption that the Agreements' forum-selection clause should be enforced here.

## II.     The Agreements' Alleged Unenforceability Does Not Impact the Enforceability of the Forum-Selection Clause.

In her quest to avoid litigating this case in the bargained-for forum, Plaintiff may argue that the Agreement's forum-selection clause is unenforceable because the Agreement itself is allegedly "void and unenforceable." ECF Doc. 1-1, ¶ 2. State and federal courts in New Jersey have considered and rejected this argument, reasoning that "[t]o proceed in such a last-things-first manner would undermine the forum selection clause, which is designed to determine at the outset of litigation which forum gets to decide such ultimate[] issue in the case." *Radware, Inc. v. U.S. TelePacific Corp.*, No. CIV.A. 18-17266, 2019 WL 13202075, at *3 (D.N.J. June 11, 2019); *see also, e.g.*, *Mathews v. Rescuecom Corp.*, No. CIV 05-4834, 2006 WL 414096, at *5 n.8 (D.N.J. Feb. 16, 2006) ("[A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract.") (quotation omitted); *Largoza v. FKM Real Estate Holdings, Inc.*, 474 N.J. Super. 61, 76-77 (App. Div. 2022) (collecting cases).

Likewise, here, the overall validity of the Agreements must be determined in the contractually agreed-upon forum. To hold otherwise would render the forum-selection clause meaningless. Accordingly, the question of whether the Agreements violate the New Jersey Consumer Fraud Act or any other state statutes must be determined by the Circuit Court of Cook County, Illinois. This Court should therefore dismiss the Complaint.

14

## CONCLUSION

For the foregoing reasons, the Oasis Parties respectfully request that this Court

dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

without prejudice, to allow Plaintiff to file its claims in the Circuit Court of Cook

County, Illinois, in compliance with the Agreement's forum-selection clause.


Dated:  February 23, 2023                  Respectfully submitted,

                                           */s/ Kaitlyn E. Stone*
                                           Kaitlyn E. Stone
                                           BARNES & THORNBURG LLP
                                           67 East Park Place, Suite 500
                                           Morristown, NJ 07960
                                           Tel. (973) 755-6101
                                           Fax. (973) 775-6102
                                           kaitlyn.stone@btlaw.com

                                           Christine E. Skoczylas (*Admitted Pro
                                             Hac Vice*)
                                           ARDC No. 6293811
                                           BARNES & THORNBURG LLP
                                           One North Wacker Drive, Suite 4400
                                           Tel.  (312) 214-5613
                                           Fax.  (312) 759-5646
                                           Christine.skoczylas@btlaw.com

                                           *Attorneys for Oasis Legal Finance, LLC,
                                           Oasis Legal Finance Operating
                                           Company, LLC, Oasis Legal Finance
                                           Holding Company, LLC, and OFLC,
                                           LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification

of this filing to the attorneys of record and all registered participants.


*/s/ Kaitlyn E. Stone*

The Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,*
*Oasis Legal Finance Operating*
*Company, LLC, Oasis Legal Finance*
*Holding Company, LLC, and OFLC,*
*LLC*

**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No.: 2:23-cv-00581 |
| OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY, LLC; OASIS FINANCIAL OPERATING COMPANY, LLC, and JOHN DOES 1 to 10, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DECLARATION OF DAVID WINKIEL**

**DAVID WINKIEL**, having personal knowledge of the facts stated herein,

pursuant to 28 U.S.C. § 1746, declare and state as follows:

1.      I am employed by Oasis Legal Finance, LLC ("Oasis Financial"), as its Vice President of Information Technology. I have reviewed Oasis Financial's business records for the period January 9, 2017, through January 9, 2023.

2.      I know the following to be true of my own personal knowledge. If called upon to do so, I could and would testify competently to the facts stated in this Declaration under oath.

3.      Between January 9, 2017, and January 9, 2023, Oasis Financial entered into purchase agreements, like the ones that Plaintiff, Shana Gafner, entered into, with approximately 1,500 individuals residing in New Jersey (the "New Jersey Agreements"). In tallying the number of individuals with New Jersey Agreements, I considered only those Oasis Financial customers who had Agreements with a Purchase Price of less than $50,000.

4.      I reviewed the purchase agreements that Shana Gafner entered into, and the Oasis entity that is a party to each of her three agreements is Oasis Legal Finance, LLC, which does business as "Oasis Financial." True and correct copies of Ms. Gafner's three Nonrecourse Purchase Agreements with Oasis Financial are attached as **Exhibits A-C**. Oasis Legal Finance, LLC, is the only Oasis entity that is a party to the Ms. Gafner's and the other New Jersey Purchase Agreements. Oasis Legal Finance Operating Company, LLC, Oasis Legal Finance Holding Company, LLC, and OFLC, LLC are not parties to any of the New Jersey Agreements.

5.     The value of the New Jersey Agreements exceeds $5,000,000. Oasis Financial collected approximately $25 million from a portion of the New Jersey Agreements that resolved between January 9, 2017, and January 9, 2023. The total amount currently owed and unpaid on unresolved New Jersey Agreements exceeds $15 million, including over $6.7 million in principal funded to purchasers. The total amount owed to Oasis Financial under the New Jersey Agreements may increase as time passes without resolution. In calculating these amounts, I considered only New Jersey Agreements with Oasis Financial customers who had Agreements with a Purchase Price of less than $50,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of February 2023.

David Winkiel
Vice President of Information Technology
Oasis Legal Finance, LLC

# EXHIBIT A

DocuSign Envelope ID: 82546779-5B53-158A-B13A-A3DE55B7BF67



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## COVER PAGE

| | | | |
|---|---|---|---|
| **Date:** | September 28, 2016 | | |
| **Sent to:** | Shana Gafner | Brandon Broderick, Esq. | |
| | ██████████████ | 11 Atlantic St. | |
| | Lodi, NJ 07644 | Hackensack, NJ 07601 | |
| | Fax: | Fax: (201) 489-0878 | |
| | Email: | Email: | |
| **From:** | David Graubart | **Pages:** <u>14</u> (including cover) | |
| | Oasis Financial | | |
| **Re:** | **Shana Gafner Purchase Agreement** | | |
| | **Oasis Case ID: P-AE-NJ-868835** | | |

## PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS.

### <u>CHECKLIST FOR SHANA GAFNER</u>

☐ Complete and sign the Consumer Disclosure

☐ Complete and sign the Payment Instructions.

☐ Complete and sign the Information Release.

☐ Complete and sign the Purchase Agreement-Page 1

☐ Complete and sign the Purchase Agreement-Page 6

☐ Sign the Irrevocable Letter of Direction.

### <u>CHECKLIST FOR ATTORNEY BRANDON BRODERICK, ESQ.</u>

☐ Sign the Attorney Acknowledgment portion of the Irrevocable Letter of Direction and list the approximate amount of any related medical and statutory liens.

We greatly appreciate your assistance with the process. Once you receive your Oasis cash funding, please notify us if you wish to receive any future fundings.

PLEASE COMPLETE THE ATTACHED DOCUMENTS AND RETURN BY **<u>ONE</u>** OF THE FOLLOWING METHODS
- ELECTRONICALLY (E-SIGNATURE: THE FASTEST WAY TO SUBMIT THE DOCUMENTS);
- BY EMAIL TO: aorellano@oasisfinancial.com;
- BY FACSIMILE TO: (847) 897-3113.



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CONSUMER DISCLOSURE

**Date:** September 28, 2016
**Consumer:** Shana Gafner
**Oasis Case ID:** P-AE-NJ-868835

**PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS**

| What Oasis will own from Shana Gafner's Legal Claim: | |
| --- | --- |
| **Date Range** | **Oasis Ownership Amount** |
| **September 29, 2016 to December 28, 2016** | **$2,500.00** |
| **December 29, 2016 to March 28, 2017** | **$2,800.00** |
| **March 29, 2017 to September 28, 2017** | **$3,100.00** |
| **September 29, 2017 to December 28, 2017** | **$4,300.00** |
| **December 29, 2017 and thereafter** | **$4,500.00** |
| | |
| **Additional Fees** | |
| **Archiving and document management fees** | **$60.00** |
| **Case servicing fee for every 6 months** | **$35.00** |
| **Subsequent case review fee for each additional funding** | **$20.00** |

IF SELLER (SHANA GAFNER) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING**.

**Price paid by OASIS FINANCIAL to SHANA GAFNER** to purchase the contingent right to a portion of the Proceeds from the Legal Claim(s):

**$2,000.00**

**Optional Handling Fee**; (Handling fees vary depending on how Shana Gafner chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing Featuring New E-Signature: $20.00

- $    **0 to 219.00**

**Amount Shana Gafner will receive from this funding, pending final approval:**

=$ **1,781.00 to 2,000.00**

I, Shana Gafner, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.

DocuSigned by:
*Shana Gafner*
47519705304421...

9/29/2016
**Date**



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## PAYMENT INSTRUCTIONS

**Seller: Shana Gafner**
**Purchase Price to Seller**: $2,000.00

**Case ID: P-AE-NJ-868835**

| Select if Wanted | Processing Option | Details |
|---|---|---|
| ☒ | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing is **required** with E-Signature, but Priority Processing is also available without E-Signature. **Fee: $20.00** |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| ☒ Option 1 | **Money in Minutes at any** WESTERN UNION yes! | **Same Day** | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $149.00 | You must present a government issued photo ID to pick up funds. |
| ☐ Option 2 | **Direct Deposit to your bank account.** | **Same Day** | Oasis must receive the signed documents by 2:00 p.m. CST on the funding day. **Fee:** $149.00 | Name of Bank: _____ Bank's City, State: _____ Routing/ABA Number: _____ Account Number: _____ Bank's Phone Number: _____ Your Name on Account (must match exactly): |
| ☐ Option 3 | **Check via Overnight Delivery** | **1 Day** | A **Check** sent by **Overnight Delivery** service for delivery by the next business day. **Fee:** $99.00. (Weekends and holidays not included.) | Street Address        Apt / Unit # City: State:                      Zip |
| ☐ Option 4 | **Check via U.S. First Class Mail** | **5-10 Days** | A **Check** sent **U.S. First Class Mail** with Delivery Confirmation **Fee:** Free | Street Address        Apt / Unit # City: State:                      Zip |

Please describe how we helped you during these difficult times:

Tremendously

By signing below, I, Shana Gafner, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by Shana Gafner. I also agree to the use of the above statements at the discretion of Oasis.

*Shana Gafner*
4751970530444421...

9/29/2016

**Shana Gafner**

**Date**

PAYMENT INSTRUCTIONS
Case ID: P-AE-NJ-868835

DocuSign Envelope ID: 8254677D-5953-459A-B13A-49E55B7BF67



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CREDIT AND INFORMATION RELEASE

**PLEASE READ CAREFULLY:** BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial (Oasis) or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me, and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

Oasis may use your social security number and other identifying information to obtain a consumer credit report, financial information, and/or other credit information as part of the proposed transaction. Credit reports may be obtained after you are provisionally approved for funding for verification of liens. **Please note your credit score is not considered as part of the underwriting process.**

This authorization is valid for purposes of verifying information given including, but not limited to, use in funding database(s), and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, settlement information, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Shana Gafner**

*Shana Gafner*
475197053044421...
Signature

9/29/2016
Date

201█████
Telephone Number

█████████
Social Security Number

G█████        B████████
State of Driver's License    Driver's License Number

█████████
Date of Birth

██████████
Street Address

Lodi          Nj          07644
City          State       Zip

CREDIT AND INFORMATION RELEASE
Case ID: P-AE-NJ-868835

DocuSign Envelope ID: 8254677B-5958-458A-913A-A4DE55B7BF67

# NONRECOURSE PURCHASE AGREEMENT

**THIS NONRECOURSE PURCHASE AGREEMENT** (the "Purchase Agreement") is made and entered by and between Oasis 9/29/2016 Legal Finance, LLC d/b/a Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and  Shana Gafner at 233 Roosevelt Ave  Lodi, NJ 07644 ("Seller"), (collectively "the Parties").

| | |
|---|---|
| **Purchaser:** | **Oasis Financial (Oasis)** |
| **Seller:** | Shana Gafner |
| **Purchase Price:** | **$2,000.00** |

| **Date Range** | **Oasis Ownership Amount** |
|---|---|
| September 29, 2016 to December 28, 2016 | $2,500.00 |
| December 29, 2016 to March 28, 2017 | $2,800.00 |
| March 29, 2017 to September 28, 2017 | $3,100.00 |
| September 29, 2017 to December 28, 2017 | $4,300.00 |
| December 29, 2017 and thereafter | $4,500.00 |

| **Additional Fees** | **Fees** |
|---|---|
| Archiving and Document Management fee | $60.00 |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |

**SELLER (SHANA GAFNER) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.**

**IF SELLER (SHANA GAFNER) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (SHANA GAFNER) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

| **Seller's Signature** | **Date** |
|---|---|
| *Shana Gafner* | 9/29/2016 |
| 475197053044421... | |

**Shana Gafner**

## SECTION 1. DEFINITIONS

**1.1** **"Seller"** means Shana Gafner.

**1.2** **"Seller's Attorney"** means Brandon Broderick, Esq., who is Seller's (Shana Gafner's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Shana Gafner) in the Legal Claim(s).

**1.3** **"Purchaser"** means Oasis Financial.

**1.4** **"Legal Claim(s)"** means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Shana Gafner) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Shana Gafner) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Shana Gafner) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $2,000.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Shana Gafner) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

> **Archiving and Document Management Fee.** $60.00 per funding for Purchaser's (Oasis') archiving and document management costs.

> **Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period. Subsequent fundings on the same case will not be charged additional servicing fees.

> **Subsequent Case Review.** $20.00 each time Seller (Shana Gafner) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Shana Gafner) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Shana Gafner) Seller's (Shana Gafner's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Shana Gafner) the Purchase Price.

### SECTION 2. SELLER'S (SHANA GAFNER'S) AND PURCHASER'S (OASIS')
### MUTUAL ACKNOWLEDGEMENTS

Seller (Shana Gafner) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Shana Gafner's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Shana Gafner) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Shana Gafner) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis). Purchaser (Oasis) and Seller (Shana Gafner) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Shana Gafner) and Shana Gafner's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Shana Gafner) sells and transfers the Purchased Right to the Purchaser (Oasis). Seller (Shana Gafner) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis). See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Shana Gafner's) attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Shana Gafner) or Seller's (Shana Gafner's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Shana Gafner) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Shana Gafner) and Seller's (Shana Gafner's) Attorney.

### SECTION 3. SELLER'S (SHANA GAFNER'S) ACKNOWLEDGEMENTS AND AGREEMENTS

Seller (Shana Gafner) acknowledges and agrees as follows:

**3.1     Title; Capacity.**  Seller (Shana Gafner) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2     Information True, Complete and Correct.**  Seller (Shana Gafner) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Shana Gafner) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s)**.**

**3.3     No Previous Encumbrances.**  Seller (Shana Gafner) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Shana Gafner) or Seller's (Shana Gafner's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Shana Gafner) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement.  In the event that previous encumbrances exist, Seller (Shana Gafner) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4     No Further Transfer.**  Seller (Shana Gafner) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Shana Gafner)  death.  In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Shana Gafner's) death, Seller's (Shana Gafner's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5     Treatment in Bankruptcy.**  If Seller (Shana Gafner) commences or has commenced against Seller (Shana Gafner) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Shana Gafner) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Shana Gafner) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above.  Further, Seller (Shana Gafner) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Shana Gafner). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6     Financing Statements and Additional Documents.**  Seller (Shana Gafner) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser (Oasis) may indicate the following information in such financial statements and amendments:  (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction.  Seller (Shana Gafner) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives.  Seller (Shana Gafner) will be referred to as the Seller (Shana Gafner) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements.  The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7     Substitution of Attorneys.**  If Seller (Shana Gafner) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Shana Gafner) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel.  Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8     Requests for Documents and Information.**  Seller (Shana Gafner) shall provide, and authorizes, and directs Seller's (Shana Gafner's) Attorney to provide Purchaser (Oasis) with: (a)  prompt written notice of any receipt by Seller (Shana Gafner) or Seller's (Shana Gafner's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt;  (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

## SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY

**4.1     Priority of Delivery to Purchaser (Oasis).**  Seller (Shana Gafner) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Shana Gafner) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

**4.2     Timing of Delivery.**  Seller (Shana Gafner) shall direct Seller's (Shana Gafner's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Shana Gafner's) Attorney's receipt of the Proceeds.  Seller (Shana Gafner) shall prohibit Seller's (Shana Gafner) Attorney from disbursing the Oasis Ownership Amount to Seller (Shana Gafner), any other individuals, or other entities without first satisfying the Purchased Right.

Seller (Shana Gafner) agrees not to have the Oasis Ownership amount paid to Seller (Shana Gafner). Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Shana Gafner's) Attorney. If any dispute arises over the amount owed to Oasis, Seller (Shana Gafner) agrees to direct that Seller's (Shana Gafner's) Attorney shall hold the funds in trust until the dispute is resolved.

## SECTION 5. EVENT OF BREACH; SPECIFIC BREACH; SELLER'S (SHANA GAFNER'S) RIGHT OF RESCISSION

**5.1     Event of Breach.**   The breach by Seller (Shana Gafner) of any of Seller's (Shana Gafner's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder. In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Shana Gafner), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2     Creation of Trust.**   Should the Oasis Ownership Amount be sent to Seller (Shana Gafner), Seller (Shana Gafner) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Shana Gafner), Seller (Shana Gafner), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created. Seller (Shana Gafner) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3     Receipt of Funds.**   If Seller (Shana Gafner) does not receive the Purchase Price, Seller (Shana Gafner) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement. After FIVE (5) days, Seller (Shana Gafner) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4     SELLER, (SHANA GAFNER'S) RIGHT OF RESCISSION:**

**SHANA GAFNER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE SHANA GAFNER RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, SHANA GAFNER MUST EITHER:**

(a) **RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

(b) **MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS') UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS') ADDRESS AS SET FORTH IN SECTION 6 BELOW.**

## SECTION 6. MISCELLANEOUS

**6.1     Survival of Representations.**   All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2     Notices.**   All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Seller (Shana Gafner):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

**6.3     Release to Contact Third Parties.**   It may be necessary to disclose information to third parties. Seller (Shana Gafner) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement. Seller (Shana Gafner) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4      Waiver.**  Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights.  The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5      GOVERNING LAW AND FORUM.  THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY.**

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6      WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7      Counterparts; Electronic and Facsimile Signatures.**  This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.  This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8      Assignment; Use of Information.**  Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Shana Gafner).  Seller's (Shana Gafner's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Shana Gafner's)  death in which case Seller's (Shana Gafner's)  heirs, estate executors and personal representatives will be bound by this Purchase Agreement.  Seller (Shana Gafner) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Shana Gafner) (whether from Seller (Shana Gafner) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this Purchase Agreement, provided that:  (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

**6.9      No Third Party Beneficiaries; Successors and Assigns.**  Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Shana Gafner); and (b) this Purchase Agreement shall be

binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**6.10** **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**6.11** **LEGAL REPRESENTATION. SELLER (SHANA GAFNER) UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (SHANA GAFNER) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (SHANA GAFNER) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (SHANA GAFNER'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**6.12** **Construction.** The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

---

**I, Shana Gafner, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement. This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Shana Gafner).**

| Seller's Signature | Date | Purchaser's Signature | Date |
|---|---|---|---|
| | 9/29/2016 | | |
| *Shana Gafner* | | | 09/29/2016 |
| 475197063044421... | | | |
| **Shana Gafner** | | **Oasis Financial** | |

---



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

<u>Sent by Fax and/or E-Mail</u>                                                         September 28, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

                                        **PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Dear Brandon Broderick,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

                                                            Seller's Initials:          *SG*

<u>I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

*Shana Gafner*
475197053044421...
_____
**Shana Gafner-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, Brandon Broderick, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

                                        **Please provide email for case updates:**

_____                    _____
**Brandon Broderick, Esq.**                                    **E-mail**

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

DocuSign Envelope ID: 2254677B-E0B7-458A-B130-42DF55D7BF67



9525 W. Bryn Mawr Ave., Suite 900
Rosemont, Illinois 60018
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

<u>**Sent by Fax and/or E-Mail**</u>                                                                September 28, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

### PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT

Dear Brandon Broderick,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

Seller's Initials: _SG_

<u>**I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.**</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

*Shana Gafner*
475197053044421...

**Shana Gafner-Seller**

### ATTORNEY ACKNOWLEDGMENT

- I, **Brandon Broderick**, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

Please provide email for case updates:

_____                        mforlizzi@2olinjury.com
**Brandon Broderick, Esq.**                                              E-mail

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

IRREVOCABLE LETTER OF DIRECTION
Case ID: P-AE-NJ-868835



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## NOTICE OF PURCHASE

September 28, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

RE:     OUR CLIENT:         **Shana Gafner**
        OUR CASE ID:        **P-AE-NJ-868835**

Dear Brandon Broderick,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Shana Gafner. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Shana Gafner.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
|---|---|
| September 29, 2016 to December 28, 2016 | $2,500.00 |
| December 29, 2016 to March 28, 2017 | $2,800.00 |
| March 29, 2017 to September 28, 2017 | $3,100.00 |
| September 29, 2017 to December 28, 2017 | $4,300.00 |
| December 29, 2017 and thereafter | $4,500.00 |

### ADDITIONAL FEES

| | |
|---|---|
| Archiving and document management fees | $60.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?** The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?** We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.**-----**Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?** To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

DocuSign Envelope ID: 2254677B-5C88-450A-8L9A-2F55D78F67

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?**  We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information-**While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features.  In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies.  *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| **Non-affiliates:** | Companies not related by common ownership or control.  They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you.   *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms-**We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public.  We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users.  Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy-**This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law.  Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

# EXHIBIT B



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## COVER PAGE

**Date:**      November 7, 2016

**Sent to:**   Shana Gafner                              Brandon Broderick, Esq.
              ▮▮▮▮▮▮▮▮▮▮▮                               11 Atlantic St.
              Lodi, NJ 07644                             Hackensack, NJ 07601
              Fax:                                       Fax: (201) 489-0878
              Email: ▮▮▮▮▮▮▮@icloud.com                  Email:

**From:**      David Graubart               **Pages:** 14 (including cover)
              Oasis Financial

**Re:**        **Shana Gafner Purchase Agreement**
              **Oasis Case ID: P-AE-NJ-868835**

# PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS.

### CHECKLIST FOR SHANA GAFNER

☐   Complete and sign the Consumer Disclosure

☐   Complete and sign the Payment Instructions.

☐   Complete and sign the Information Release.

☐   Complete and sign the Purchase Agreement-Page 1

☐   Complete and sign the Purchase Agreement-Page 6

☐   Sign the Irrevocable Letter of Direction.

### CHECKLIST FOR ATTORNEY BRANDON BRODERICK, ESQ.

☐   Sign the Attorney Acknowledgment portion of the Irrevocable Letter of Direction and list the approximate amount of any related medical and statutory liens.

We greatly appreciate your assistance with the process.  Once you receive your Oasis cash funding, please notify us if you wish to receive any future fundings.

PLEASE COMPLETE THE ATTACHED DOCUMENTS AND RETURN BY **ONE** OF THE FOLLOWING METHODS
- ELECTRONICALLY (E-SIGNATURE: THE FASTEST WAY TO SUBMIT THE DOCUMENTS);
- BY EMAIL TO: aorellano@oasisfinancial.com;
- BY FACSIMILE TO: (847) 897-3113.



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CONSUMER DISCLOSURE

**Date:** November 7, 2016
**Consumer:** Shana Gafner
**Oasis Case ID:** P-AE-NJ-868835

**PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS**

| What Oasis will own from Shana Gafner's Legal Claim: | |
| --- | --- |
| **Date Range** | **Oasis Ownership Amount** |
| **November 8, 2016 to February 7, 2017** | **$1,250.00** |
| **February 8, 2017 to May 7, 2017** | **$1,400.00** |
| **May 8, 2017 to November 7, 2017** | **$1,550.00** |
| **November 8, 2017 to February 7, 2018** | **$2,150.00** |
| **February 8, 2018 and thereafter** | **$2,250.00** |
| | |
| **Additional Fees** | |
| **Archiving and document management fees** | **$35.00** |
| **Case servicing fee for every 6 months** | **$35.00** |
| **Subsequent case review fee for each additional funding** | **$20.00** |

IF SELLER (SHANA GAFNER) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING**.

**Price paid by OASIS FINANCIAL to SHANA GAFNER** to purchase the contingent right to a portion of the Proceeds from the Legal Claim(s):                    **$1,000.00**

**Optional Handling Fee**; (Handling fees vary depending on how Shana Gafner chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00                    - $    0 to 219.00
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing New E-Signature: $20.00
**Amount Shana Gafner will receive from this funding,**                    =$ **781.00 to 1,000.00**
**pending final approval:**

I, Shana Gafner, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.

DocuSigned by:

*Shana Gafner* _____                    11/7/2016
—4751970530444421—                    **Date**

DocuSign Envelope ID: 29355200F0AB-4390-83BB-6F90F556C0E5



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## PAYMENT INSTRUCTIONS

**Seller: Shana Gafner**                                **Case ID: P-AE-NJ-868835**
**Purchase Price to Seller**: $1,000.00

| Select if Wanted | Processing Option | Details |
|---|---|---|
| ☒ | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing is **required** with E-Signature, but Priority Processing is also available without E-Signature. **Fee: $20.00** |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| Option 1 ☐ | **Money in Minutes at any** WESTERN UNION \| yes! | Same Day | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $113.00 | You must present a government issued photo ID to pick up funds. |
| Option 2 ☐ | **Direct Deposit to your bank account.** | Same Day | Oasis must receive the signed documents by 2:00 p.m. CST on the funding day. **Fee:** $113.00 | Name of Bank: _____ Bank's City, State: _____ Routing/ABA Number: _____ Account Number: _____ Bank's Phone Number: _____ Your Name on Account (must match exactly): _____ |
| Option 3 ☐ | **Check via Overnight Delivery** | 1 Day | A **Check** sent by **Overnight Delivery** service for delivery by the next business day. **Fee:** $99.00. (Weekends and holidays not included). | Street Address _____ Apt / Unit # _____ City: _____ State: _____ Zip _____ |
| Option 4 ☒ | **Check via U.S. First Class Mail** | 5-10 Days | A **Check** sent **U.S. First Class Mail** with Delivery Confirmation **Fee:** Free | Street Address 235 Roosevelt avenue #F  Apt / Unit # City: State: NJ  ? Zip 07644 |

**Please describe how we helped you during these difficult times:**

Thank u for everything

By signing below, I, Shana Gafner, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by Shana Gafner. I also agree to the use of the above statements at the discretion of Oasis.

DocuSigned by:
*Shana Gafner*
475197053044421...                                                 11/7/2016
**Shana Gafner**                                                    **Date**

PAYMENT INSTRUCTIONS
Case ID: P-AE-NJ-868835



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CREDIT AND INFORMATION RELEASE

**PLEASE READ CAREFULLY:** BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial (Oasis) or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me, and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

Oasis may use your social security number and other identifying information to obtain a consumer credit report, financial information, and/or other credit information as part of the proposed transaction. Credit reports may be obtained after you are provisionally approved for funding for verification of liens. **Please note your credit score is not considered as part of the underwriting process.**

This authorization is valid for purposes of verifying information given including, but not limited to, use in funding database(s), and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, settlement information, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Shana Gafner**

| | |
|---|---|
| *Shana Gafner*  DocuSigned by: 475197053044421... | 11/7/2016 |
| Signature | Date |
| 201████ | ████ |
| Telephone Number | Social Security Number |
| Nj | ████ |
| State of Driver's License    Driver's License Number | Date of Birth |
| ████ | Lodi          Nj          07644 |
| Street Address | City          State          Zip |

## NONRECOURSE PURCHASE AGREEMENT

**THIS NONRECOURSE PURCHASE AGREEMENT** (the "Purchase Agreement") is made and entered by and between Oasis Legal Finance, LLC d/b/a Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and <u>Shana Gafner</u> at <u>233 Roosevelt Ave  Lodi, NJ 07644</u> ("Seller"), (collectively "the Parties").

| | |
|---|---|
| **Purchaser:** | **Oasis Financial (Oasis)** |
| **Seller:** | Shana Gafner |
| **Purchase Price:** | **$1,000.00** |

| **Date Range** | **Oasis Ownership Amount** |
|---|---|
| **November 8, 2016 to February 7, 2017** | **$1,250.00** |
| **February 8, 2017 to May 7, 2017** | **$1,400.00** |
| **May 8, 2017 to November 7, 2017** | **$1,550.00** |
| **November 8, 2017 to February 7, 2018** | **$2,150.00** |
| **February 8, 2018 and thereafter** | **$2,250.00** |

| **Additional Fees** | **Fees** |
|---|---|
| **Archiving and Document Management fee** | **$35.00** |
| **Case Servicing Fee every 6 months** | **$35.00** |
| **Subsequent Case Review for each additional funding** | **$20.00** |

**SELLER (SHANA GAFNER) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.**

**IF SELLER (SHANA GAFNER) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (SHANA GAFNER) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

| **Seller's Signature** | **Date** |
|---|---|
| *Shana Gafner* | 11/7/2016 |
| 475197053044421... | |
| **Shana Gafner** | |

### SECTION 1. DEFINITIONS

**1.1** **"Seller"** means Shana Gafner.

**1.2** **"Seller's Attorney"** means Brandon Broderick, Esq., who is Seller's (Shana Gafner's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Shana Gafner) in the Legal Claim(s).

**1.3** **"Purchaser"** means Oasis Financial.

**1.4** **"Legal Claim(s)"** means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Shana Gafner) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Shana Gafner) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Shana Gafner) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $1,000.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Shana Gafner) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

> **Archiving and Document Management Fee.** $35.00 per funding for Purchaser's (Oasis') archiving and document management costs.

> **Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period. Subsequent fundings on the same case will not be charged additional servicing fees.

> **Subsequent Case Review.** $20.00 each time Seller (Shana Gafner) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Shana Gafner) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Shana Gafner) Seller's (Shana Gafner's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Shana Gafner) the Purchase Price.

## SECTION 2. SELLER'S (SHANA GAFNER'S) AND PURCHASER'S (OASIS') MUTUAL ACKNOWLEDGEMENTS

Seller (Shana Gafner) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Shana Gafner's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Shana Gafner) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Shana Gafner) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis). Purchaser (Oasis) and Seller (Shana Gafner) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Shana Gafner) and Shana Gafner's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Shana Gafner) sells and transfers the Purchased Right to the Purchaser (Oasis). Seller (Shana Gafner) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis). See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Shana Gafner's) attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Shana Gafner) or Seller's (Shana Gafner's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Shana Gafner) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Shana Gafner) and Seller's (Shana Gafner's) Attorney.

## SECTION 3. SELLER'S (SHANA GAFNER'S) ACKNOWLEDGEMENTS AND AGREEMENTS

Seller (Shana Gafner) acknowledges and agrees as follows:

**3.1     Title; Capacity.**  Seller (Shana Gafner) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2     Information True, Complete and Correct.**  Seller (Shana Gafner) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Shana Gafner) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s)**.**

**3.3     No Previous Encumbrances.**  Seller (Shana Gafner) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Shana Gafner) or Seller's (Shana Gafner's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Shana Gafner) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement.  In the event that previous encumbrances exist, Seller (Shana Gafner) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4     No Further Transfer.**  Seller (Shana Gafner) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Shana Gafner)  death.  In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Shana Gafner's) death, Seller's (Shana Gafner's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5     Treatment in Bankruptcy.**  If Seller (Shana Gafner) commences or has commenced against Seller (Shana Gafner) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Shana Gafner) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Shana Gafner) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above.  Further, Seller (Shana Gafner) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Shana Gafner). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6     Financing Statements and Additional Documents.**  Seller (Shana Gafner) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser (Oasis) may indicate the following information in such financial statements and amendments:  (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction.  Seller (Shana Gafner) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives.  Seller (Shana Gafner) will be referred to as the Seller (Shana Gafner) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements.  The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7     Substitution of Attorneys.**  If Seller (Shana Gafner) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Shana Gafner) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel.  Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8     Requests for Documents and Information.**  Seller (Shana Gafner) shall provide, and authorizes, and directs Seller's (Shana Gafner's) Attorney to provide Purchaser (Oasis) with: (a)  prompt written notice of any receipt by Seller (Shana Gafner) or Seller's (Shana Gafner's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt;  (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

## SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY

**4.1     Priority of Delivery to Purchaser (Oasis).**  Seller (Shana Gafner) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Shana Gafner) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

**4.2     Timing of Delivery.**  Seller (Shana Gafner) shall direct Seller's (Shana Gafner's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Shana Gafner's) Attorney's receipt of the Proceeds.  Seller (Shana Gafner) shall prohibit Seller's (Shana Gafner) Attorney from disbursing the Oasis Ownership Amount to Seller (Shana Gafner), any other individuals, or other entities without first satisfying the Purchased Right.

Seller (Shana Gafner) agrees not to have the Oasis Ownership amount paid to Seller (Shana Gafner). Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Shana Gafner's) Attorney. If any dispute arises over the amount owed to Oasis, Seller (Shana Gafner) agrees to direct that Seller's (Shana Gafner's) Attorney shall hold the funds in trust until the dispute is resolved.

## SECTION 5. EVENT OF BREACH; SPECIFIC BREACH;
## SELLER'S (SHANA GAFNER'S) RIGHT OF RESCISSION

**5.1      Event of Breach.**   The breach by Seller (Shana Gafner) of any of Seller's (Shana Gafner's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder. In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Shana Gafner), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2      Creation of Trust.**   Should the Oasis Ownership Amount be sent to Seller (Shana Gafner), Seller (Shana Gafner) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Shana Gafner), Seller (Shana Gafner), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created. Seller (Shana Gafner) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3      Receipt of Funds.**   If Seller (Shana Gafner) does not receive the Purchase Price, Seller (Shana Gafner) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement. After FIVE (5) days, Seller (Shana Gafner) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4      SELLER, (SHANA GAFNER'S) RIGHT OF RESCISSION:**

**SHANA GAFNER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE SHANA GAFNER RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, SHANA GAFNER MUST EITHER:**

   **(a)  RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

   **(b)  MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS') UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS') ADDRESS AS SET FORTH IN SECTION 6.2 BELOW.**

## SECTION 6. MISCELLANEOUS

**6.1      Survival of Representations.**   All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2      Notices.**   All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

   **If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

   **If to Seller (Shana Gafner):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

**6.3      Release to Contact Third Parties.**   It may be necessary to disclose information to third parties. Seller (Shana Gafner) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement. Seller (Shana Gafner) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4     Waiver.**  Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights.  The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5     GOVERNING LAW AND FORUM.  THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY**.

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6     WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7     Counterparts; Electronic and Facsimile Signatures.**  This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.  This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8     Assignment; Use of Information.**  Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Shana Gafner).  Seller's (Shana Gafner's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Shana Gafner's)  death in which case Seller's (Shana Gafner's)  heirs, estate executors and personal representatives will be bound by this Purchase Agreement.  Seller (Shana Gafner) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Shana Gafner) (whether from Seller (Shana Gafner) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this Purchase Agreement, provided that:  (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

**6.9     No Third Party Beneficiaries; Successors and Assigns.**  Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Shana Gafner); and (b) this Purchase Agreement shall be

binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**6.10     Severability.**  If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law.  If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**6.11     LEGAL REPRESENTATION.  SELLER (SHANA GAFNER) UNDERSTANDS AND ACKNOWLEDGES THAT:  (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (SHANA GAFNER) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (SHANA GAFNER) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (SHANA GAFNER'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**6.12     Construction.**  The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

---

**I, Shana Gafner, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages.  I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement.  This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Shana Gafner).**

| Seller's Signature | Date | Purchaser's Signature | Date |
|---|---|---|---|
| | 11/7/2016 | | |
| *Shana Gafner* | | | 11/08/2016 |
| DocuSigned by: 475197053044421... | | | |
| **Shana Gafner** | | **Oasis Financial** | |



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

<u>Sent by Fax and/or E-Mail</u>                                                          November 7, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

**PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Dear Brandon Broderick,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

Seller's Initials:                                  SG

<u>I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

*Shana Gafner*
475197053044421...
_____
**Shana Gafner-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, Brandon Broderick, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

**Please provide email for case updates:**

_____                              _____
**Brandon Broderick, Esq.**                                        **E-mail**

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

IRREVOCABLE LETTER OF DIRECTION
Case ID: P-AE-NJ-868835

DocuSign Envelope ID: E0B55BC9-2AAB-4229-BBD8-52F9CDE56C0E



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

**Sent by Fax and/or E-Mail**                                                      November 7, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

### PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT

Dear Brandon Broderick,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. **PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT.** If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

**Seller's Initials:**            _SG_

**I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.** I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

_Shana Gafner_
475197053044421

**Shana Gafner-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, **Brandon Broderick**, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.
- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.
- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.
- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).
- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.
- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.
- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.
- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

**Please provide email for case updates:**

_____                                    _____
**Brandon Broderick, Esq.**                                          **E-mail**

_____

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

IRREVOCABLE LETTER OF DIRECTION
Case ID: P-AE-NJ-868835



9525 W. Bryn Mawr Ave., Suite 900
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## NOTICE OF PURCHASE

November 7, 2016

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

RE: **OUR CLIENT:**  **Shana Gafner**
   **OUR CASE ID:**  **P-AE-NJ-868835**

Dear Brandon Broderick,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Shana Gafner. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Shana Gafner.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
|---|---|
| November 8, 2016 to February 7, 2017 | $1,250.00 |
| February 8, 2017 to May 7, 2017 | $1,400.00 |
| May 8, 2017 to November 7, 2017 | $1,550.00 |
| November 8, 2017 to February 7, 2018 | $2,150.00 |
| February 8, 2018 and thereafter | $2,250.00 |

### ADDITIONAL FEES

| | |
|---|---|
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**



9525 W. Bryn Mawr Ave., Suite 900
Rosemont, Illinois 60018
Phone: (847) 513-7928
Fax: (847) 897-3113

## OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?** The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?** We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.**—**Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?** To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?**  We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information-**While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features.  In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies.  *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| **Non-affiliates:** | Companies not related by common ownership or control.  They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you.   *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms-**We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public.  We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users.  Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy-**This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

# EXHIBIT C

DocuSign Envelope ID: 243BF295-7E101-331A-B09E-848C9BD8B7F



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## COVER PAGE

| | | | |
|---|---|---|---|
| **Date:** | January 4, 2017 | | |
| **Sent to:** | Shana Gafner | Brandon Broderick, Esq. | |
| | ████████████ | 11 Atlantic St. | |
| | Lodi, NJ 07644 | Hackensack, NJ 07601 | |
| | Fax: | Fax: (201) 489-0878 | |
| | Email: ████████@icloud.com | Email: | |
| **From:** | David Graubart | **Pages:** <u>14</u> (including cover) | |
| | Oasis Financial | | |
| **Re:** | **Shana Gafner Purchase Agreement** | | |
| | **Oasis Case ID: P-AE-NJ-868835** | | |

## PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS.

### <u>CHECKLIST FOR SHANA GAFNER</u>

☐  Complete and sign the Consumer Disclosure

☐  Complete and sign the Payment Instructions.

☐  Complete and sign the Information Release.

☐  Complete and sign the Purchase Agreement-Page 1

☐  Complete and sign the Purchase Agreement-Page 6

☐  Sign the Irrevocable Letter of Direction.

### <u>CHECKLIST FOR ATTORNEY BRANDON BRODERICK, ESQ.</u>

☐  Sign the Attorney Acknowledgment portion of the Irrevocable Letter of Direction and list the approximate amount of any related medical and statutory liens.

We greatly appreciate your assistance with the process.  Once you receive your Oasis cash funding, please notify us if you wish to receive any future fundings.

PLEASE COMPLETE THE ATTACHED DOCUMENTS AND RETURN BY **<u>ONE</u>** OF THE FOLLOWING METHODS

- ELECTRONICALLY (E-SIGNATURE: THE FASTEST WAY TO SUBMIT THE DOCUMENTS);
- BY EMAIL TO: aorellano@oasisfinancial.com;
- BY FACSIMILE TO: (847) 897-3113.

DocuSign Envelope ID: 243BE2367E3B1-33A4D95F898C9BD8B7F



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CONSUMER DISCLOSURE

| | | |
|---|---|---|
| **Date:** | January 4, 2017 | |
| **Consumer:** | Shana Gafner | |
| **Oasis Case ID:** | P-AE-NJ-868835 | |

> **PLEASE CALL YOUR CASE MANAGER AT (847) 513-7928, IF YOU HAVE ANY QUESTIONS**

| What Oasis will own from Shana Gafner's Legal Claim: | |
|---|---|
| **Date Range** | **Oasis Ownership Amount** |
| **January 5, 2017 to April 4, 2017** | **$775.00** |
| **April 5, 2017 to July 4, 2017** | **$868.00** |
| **July 5, 2017 to January 4, 2018** | **$961.00** |
| **January 5, 2018 to April 4, 2018** | **$1,333.00** |
| **April 5, 2018 and thereafter** | **$1,395.00** |
| | |
| **Additional Fees** | |
| **Archiving and document management fees** | **$35.00** |
| **Case servicing fee for every 6 months** | **$35.00** |
| **Subsequent case review fee for each additional funding** | **$20.00** |

IF SELLER (SHANA GAFNER) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING**.

**Price paid by OASIS FINANCIAL to SHANA GAFNER** to purchase the contingent right to a portion of the Proceeds from the Legal Claim(s):                                      $620.00

**Optional Handling Fee**; (Handling fees vary depending on how Shana Gafner chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00                                      - $   0 to 219.00
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing Featuring New E-Signature: $20.00
**Amount Shana Gafner will receive from this funding,**                                      =$ 401.00 to 620.00
**pending final approval:**

**I, Shana Gafner, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.**

DocuSigned by:

*Shana Gafner* _____                    1/4/2017
47519705304442...                                           **Date**



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## PAYMENT INSTRUCTIONS

**Seller: Shana Gafner**
**Purchase Price to Seller**: $620.00          **Case ID**: P-AE-NJ-868835

| Select if Wanted | Processing Option | Details |
|---|---|---|
| ☒ | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing is **required** with E-Signature, but Priority Processing is also available without E-Signature. **Fee: $20.00** |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| Option 1 ☐ | **Money in Minutes at any** WESTERN UNION | **Same Day** | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $97.00 | You must present a government issued photo ID to pick up funds. |
| Option 2 ☐ | **Direct Deposit to your bank account.** | **Same Day** | Oasis must receive the signed documents by 2:00 p m. CST on the funding day. **Fee:** $97.00 | Name of Bank: _____ Bank's City, State: _____ Routing/ABA Number: _____ Account Number: _____ Bank's Phone Number: _____ Your Name on Account (must match exactly): _____ |
| Option 3 ☐ | **Check via Overnight Delivery** | **1 Day** | A **Check** sent by **Overnight Delivery** service for delivery by the next business day. **Fee:** $99.00. (Weekends and holidays not included.) | Street Address _____ Apt / Unit # City: _____ State: _____ Zip _____ |
| Option 4 ☒ | **Check via U.S. First Class Mail** | **5-10 Days** | A **Check** sent **U.S. First Class Mail** with Delivery Confirmation **Fee:** Free | Street Address 233 Roosevelt Ave #F City: State: Lodi    Nj    Apt / Unit # Zip    07644 |

**Please describe how we helped you during these difficult times:**

Helped greatly

By signing below, I, Shana Gafner, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by Shana Gafner. I also agree to the use of the above statements at the discretion of Oasis.

DocuSigned by:
*Shana Gafner*          1/4/2017
4751970530444421...
**Shana Gafner**          **Date**

PAYMENT INSTRUCTIONS
Case ID: P-AE-NJ-868835



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## CREDIT AND INFORMATION RELEASE

**PLEASE READ CAREFULLY:** BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial (Oasis) or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me, and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

Oasis may use your social security number and other identifying information to obtain a consumer credit report, financial information, and/or other credit information as part of the proposed transaction. Credit reports may be obtained after you are provisionally approved for funding for verification of liens. **Please note your credit score is not considered as part of the underwriting process.**

This authorization is valid for purposes of verifying information given including, but not limited to, use in funding database(s), and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, settlement information, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Shana Gafner**

| | |
|---|---|
| *Shana Gafner* | 1/4/2017 |
| DocuSigned by: 475197053044421... | |
| Signature | Date |
| 201▮▮▮▮▮▮ | ▮▮▮▮▮▮ |
| Telephone Number | Social Security Number |
| Nj ▮▮▮▮▮▮ | ▮▮▮▮▮▮ |
| State of Driver's License    Driver's License Number | Date of Birth |
| ▮▮▮▮▮▮ | Lodi        Nj        07644 |
| Street Address | City        State        Zip |

# NONRECOURSE PURCHASE AGREEMENT

**THIS NONRECOURSE PURCHASE AGREEMENT** (the "Purchase Agreement") is made and entered by and between Oasis Legal Finance, LLC d/b/a Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and  Shana Gafner at 233 Roosevelt Ave Apt F Lodi, NJ 07644 ("Seller"), (collectively "the Parties").

| Purchaser: | Oasis Financial (Oasis) |
|---|---|
| **Seller:** | Shana Gafner |
| **Purchase Price:** | **$620.00** |

| Date Range | Oasis Ownership Amount |
|---|---|
| **January 5, 2017 to April 4, 2017** | **$775.00** |
| **April 5, 2017 to July 4, 2017** | **$868.00** |
| **July 5, 2017 to January 4, 2018** | **$961.00** |
| **January 5, 2018 to April 4, 2018** | **$1,333.00** |
| **April 5, 2018 and thereafter** | **$1,395.00** |

| Additional Fees | Fees |
|---|---|
| **Archiving and Document Management fee** | **$35.00** |
| **Case Servicing Fee every 6 months** | **$35.00** |
| **Subsequent Case Review for each additional funding** | **$20.00** |

**SELLER (SHANA GAFNER) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.**

**IF SELLER (SHANA GAFNER) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (SHANA GAFNER) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

| Seller's Signature | Date |
|---|---|
| *Shana Gafner*<br>DocuSigned by:<br>475197053044421... | 1/4/2017 |

**Shana Gafner**

## SECTION 1. DEFINITIONS

**1.1**    **"Seller"** means Shana Gafner.

**1.2**    **"Seller's Attorney"** means Brandon Broderick, Esq., who is Seller's (Shana Gafner's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Shana Gafner) in the Legal Claim(s).

**1.3**    **"Purchaser"** means Oasis Financial.

**1.4**    **"Legal Claim(s)"** means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Shana Gafner) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Shana Gafner) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Shana Gafner) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $620.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Shana Gafner) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

> **Archiving and Document Management Fee.** $35.00 per funding for Purchaser's (Oasis') archiving and document management costs.

> **Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period.  Subsequent fundings on the same case will not be charged additional servicing fees.

> **Subsequent Case Review.** $20.00 each time Seller (Shana Gafner) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Shana Gafner) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Shana Gafner) Seller's (Shana Gafner's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Shana Gafner) the Purchase Price.

**SECTION 2. SELLER'S (SHANA GAFNER'S) AND PURCHASER'S (OASIS')
MUTUAL ACKNOWLEDGEMENTS**

Seller (Shana Gafner) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Shana Gafner's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Shana Gafner) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Shana Gafner) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis).  Purchaser (Oasis) and Seller (Shana Gafner) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Shana Gafner) and Shana Gafner's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Shana Gafner) sells and transfers the Purchased Right to the Purchaser (Oasis).  Seller (Shana Gafner) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis).  See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Shana Gafner's)  attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Shana Gafner)  or Seller's (Shana Gafner's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Shana Gafner) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Shana Gafner)  and Seller's (Shana Gafner's) Attorney.

**SECTION 3. SELLER'S (SHANA GAFNER'S) ACKNOWLEDGEMENTS AND AGREEMENTS**

Seller (Shana Gafner) acknowledges and agrees as follows:

**3.1     Title; Capacity.**  Seller (Shana Gafner) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2     Information True, Complete and Correct.**  Seller (Shana Gafner) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Shana Gafner) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s)**.**

**3.3     No Previous Encumbrances.**  Seller (Shana Gafner) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Shana Gafner) or Seller's (Shana Gafner's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Shana Gafner) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement.  In the event that previous encumbrances exist, Seller (Shana Gafner) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4     No Further Transfer.**  Seller (Shana Gafner) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Shana Gafner)  death.  In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Shana Gafner's) death, Seller's (Shana Gafner's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5     Treatment in Bankruptcy.**  If Seller (Shana Gafner) commences or has commenced against Seller (Shana Gafner) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Shana Gafner) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Shana Gafner) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above.  Further, Seller (Shana Gafner) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Shana Gafner). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6     Financing Statements and Additional Documents.**  Seller (Shana Gafner) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser (Oasis) may indicate the following information in such financial statements and amendments:  (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction.  Seller (Shana Gafner) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives.  Seller (Shana Gafner) will be referred to as the Seller (Shana Gafner) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements.  The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7     Substitution of Attorneys.**  If Seller (Shana Gafner) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Shana Gafner) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel.  Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8     Requests for Documents and Information.**  Seller (Shana Gafner) shall provide, and authorizes, and directs Seller's (Shana Gafner's) Attorney to provide Purchaser (Oasis) with: (a)  prompt written notice of any receipt by Seller (Shana Gafner) or Seller's (Shana Gafner's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt;  (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

<u>**SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY**</u>

**4.1     Priority of Delivery to Purchaser (Oasis).**  Seller (Shana Gafner) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Shana Gafner) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

**4.2     Timing of Delivery.**  Seller (Shana Gafner) shall direct Seller's (Shana Gafner's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Shana Gafner's) Attorney's receipt of the Proceeds.  Seller (Shana Gafner) shall prohibit Seller's (Shana Gafner) Attorney from disbursing the Oasis Ownership Amount to Seller (Shana Gafner), any other individuals, or other entities without first satisfying the Purchased Right.

Seller (Shana Gafner) agrees not to have the Oasis Ownership amount paid to Seller (Shana Gafner). Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Shana Gafner's) Attorney. If any dispute arises over the amount owed to Oasis, Seller (Shana Gafner) agrees to direct that Seller's (Shana Gafner's) Attorney shall hold the funds in trust until the dispute is resolved.

## SECTION 5. EVENT OF BREACH; SPECIFIC BREACH; SELLER'S (SHANA GAFNER'S) RIGHT OF RESCISSION

**5.1      Event of Breach.**   The breach by Seller (Shana Gafner) of any of Seller's (Shana Gafner's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder. In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Shana Gafner), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2      Creation of Trust.**   Should the Oasis Ownership Amount be sent to Seller (Shana Gafner), Seller (Shana Gafner) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Shana Gafner), Seller (Shana Gafner), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created. Seller (Shana Gafner) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3      Receipt of Funds.**   If Seller (Shana Gafner) does not receive the Purchase Price, Seller (Shana Gafner) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement. After FIVE (5) days, Seller (Shana Gafner) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4      SELLER, (SHANA GAFNER'S) RIGHT OF RESCISSION:**

**SHANA GAFNER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE SHANA GAFNER RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, SHANA GAFNER MUST EITHER:**

**(a)   RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

**(b)   MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS') UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS') ADDRESS AS SET FORTH IN SECTION 6 BELOW.**

## SECTION 6. MISCELLANEOUS

**6.1      Survival of Representations.**   All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2      Notices.**   All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Seller (Shana Gafner):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

**6.3      Release to Contact Third Parties.**   It may be necessary to disclose information to third parties. Seller (Shana Gafner) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement. Seller (Shana Gafner) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4** **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5** **GOVERNING LAW AND FORUM. THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY.**

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6** **WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7** **Counterparts; Electronic and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement. This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8** **Assignment; Use of Information.** Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Shana Gafner). Seller's (Shana Gafner's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Shana Gafner's) death in which case Seller's (Shana Gafner's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller (Shana Gafner) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Shana Gafner) (whether from Seller (Shana Gafner) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

**6.9** **No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Shana Gafner); and (b) this Purchase Agreement shall be

DocuSign Envelope ID: 943BF2967E161-334AD95A025C9D28B7E

binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**6.10** **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**6.11** **LEGAL REPRESENTATION. SELLER (SHANA GAFNER) UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (SHANA GAFNER) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (SHANA GAFNER) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (SHANA GAFNER'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**6.12** **Construction.** The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

---

**I, Shana Gafner, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement. This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Shana Gafner).**

**Seller's Signature**        **Date**        **Purchaser's Signature**    **Date**

1/4/2017

DocuSigned by:

*Shana Gafner*

475197053044421...                  01/06/2017

**Shana Gafner**                                 **Oasis Financial**

DocuSign Envelope ID: 243BF29B-7638D-39A-AD9F-9A05C9D98B7E



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

<u>**Sent by Fax and/or E-Mail**</u>

January 4, 2017

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

Dear Brandon Broderick,

**PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

Seller's Initials: _____ SG _____

<u>**I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.**</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

*Shana Gafner*
475197053044421...
_____
**Shana Gafner-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, Brandon Broderick, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

**Please provide email for case updates:**

_____
**Brandon Broderick, Esq.**

_____
**E-mail**

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

DocuSign Envelope ID: 94BBF297-7610-4394-AD9F-8406C9BD8B7F



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## IRREVOCABLE LETTER OF DIRECTION

**Sent by Fax and/or E-Mail**                                                                January 4, 2017

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

**PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Dear Brandon Broderick,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

**Seller's Initials:**                                     _SG_

**I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.** I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,                      _Shana Gafner_
                                475197053044421..

_____
**Shana Gafner-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, Brandon Broderick, Esq., acknowledge receipt of Shana Gafner's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.
- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.
- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.
- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).
- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.
- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.
- I agree and acknowledge that upon request, I will inform Oasis whether Shana Gafner's case is still pending. I will provide other non-privileged information to Oasis and if Shana Gafner's case settles, I will request a payoff and inform Oasis that the matter has settled.
- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Shana Gafner. I will contact Oasis when the Legal Claim(s) has been resolved.

**Please provide email for case updates:**

_____                    _____
**Brandon Broderick, Esq.**                                  **E-mail**

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.



**9525 W. Bryn Mawr Ave., Suite 900
Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## NOTICE OF PURCHASE

January 4, 2017

Brandon Broderick, Esq.
11 Atlantic St.
Hackensack, NJ 07601

RE:    OUR CLIENT:    **Shana Gafner**
        OUR CASE ID:    **P-AE-NJ-868835**

Dear Brandon Broderick,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Shana Gafner. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Shana Gafner.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
|:---:|:---:|
| January 5, 2017 to April 4, 2017 | $775.00 |
| April 5, 2017 to July 4, 2017 | $868.00 |
| July 5, 2017 to January 4, 2018 | $961.00 |
| January 5, 2018 to April 4, 2018 | $1,333.00 |
| April 5, 2018 and thereafter | $1,395.00 |

### ADDITIONAL FEES

| | |
|:--|:--|
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 513-7928
Fax: (847) 897-3113

## OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis.  We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?**  The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include:  name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.  We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?**  We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law.  Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.**-----**Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting.  Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?**  To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?**  We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information-**While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features.  In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies.  *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| **Non-affiliates:** | Companies not related by common ownership or control.  They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you.   *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms-**We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public.  We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users.  Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy-**This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,*
*Oasis Legal Finance Operating*
*Company, LLC, Oasis Legal Finance*
*Holding Company, LLC, and OFLC,*
*LLC*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No.: 2:23-cv-00581-JXN-AME |
| OASIS LEGAL FINANCE, LLC d/b/a ) | Motion Day: March 20, 2023 |
| OASIS FINANCIAL; OFLC, LLC; OASIS ) STRUCTURED SETTLEMENTS; OASIS ) FINANCIAL HOLDING COMPANY, ) LLC; OASIS FINANCIAL OPERATING ) COMPANY, LLC, and JOHN DOES 1 to ) 10, ) ) | **[PROPOSED]** **ORDER DISMISSING** **PLAINTIFF'S CLASS** **ACTION COMPLAINT** **WITH PREJUDICE** |
| Defendants. ) | |

**THIS MATTER** having been opened before this Court by application of

Defendants OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL ("Oasis

Financial"), OASIS LEGAL FINANCE OPERATING COMPANY, LLC

(incorrectly named as "Oasis Financial Operating Company, LLC") ("Oasis OpCo"), OASIS LEGAL FINANCE HOLDING COMPANY, LLC (incorrectly named as "Oasis Financial Holding Company, LLC") ("Oasis HoldCo"), and OFLC, LLC ("OFLC") (collectively, the "Oasis Parties") for an Order dismissing Plaintiff's Class Action Complaint without prejudice pursuant to the parties' agreements' forum-selection clause; and the Court having considered all submissions and oral argument, if any; and for good cause shown:

**IT IS** on this _____ day of _____, 2023:

**ORDERED** that the Oasis Parties' Motion to Dismiss is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff's Class Action Complaint is hereby **DISMISSED** without prejudice.

_____
Hon.

## CERTIFICATE OF SERVICE

The foregoing submission has been electronically filed with the Court this 23rd

day of February, 2023.  Notice of this filing will be sent by operation of the Court's

electronic filing system to all parties indicated on the electronic filing receipt.

Parties may access this filing through the Court's system.

/s/ *Kaitlyn E. Stone*
Kaitlyn E. Stone
BARNES & THORNBURG LLP
1776 on the Green
67 East Park Place, Suite 500
Morristown, NJ  07960
(973) 775-6103
kaitlyn.stone@btlaw.com

| | |
|---|---|
| SHANA GAFNER, *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY LLC; OASIS FINANCIAL OPERATING COMPANY, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br>2:23-cv-00581-JXN-AME |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

Yongmoon Kim
Philip D. Stern
Mark Jensen
Hasan Siddiqui
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone & Fax (201) 273-7117
ykim@kimlf.com

Scott C. Borison (to be admitted *pro hac vice*)
BORISON FIRM, LLC
1400 South Charles Street
Baltimore, Maryland 21230
Tel. (301) 620-1016
scott@borisonfirm.com

*Attorneys for Plaintiff and the Proposed Class*

TABLE OF CONTENTS

1.   PRELIMINARY STATEMENT ................................................................1

2.   ARGUMENT ........................................................................................3

   2.1   Legal Standard ..............................................................................3

   2.2   The Loan Agreements Are Void and Unenforceable ....................4

      2.2.1   *The Loan Agreements Are Void Pursuant to the New Jersey Consumer Finance Licensing Act and the Truth-in-Consumer Contract, Warranty, and Notice Act* ........4

      2.2.2   *The Loan Agreements Violate New Jersey's Prohibition Against Usury and Constitute Unlawful Contracts* ........7

   2.3   The Forum-Selection Clauses Are Void and Unenforceable ...........9

      2.3.1   *The Forum-Selection Clauses Are Void by Mechanism of the CFLA, the TCCWNA, and New Jersey Common Law* ........9

      2.3.2   *The Forum-Selection Clauses Serve No Functional Purpose but to Inconvenience Plaintiff* ........12

      2.3.3   *The Forum-Selection Clauses Are Unenforceable Contraventions of New Jersey Public Policy* ........18

      2.3.4   *Defendants Waived Any Forum Selection Clauses* ......19

3.   CONCLUSION ....................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................3, 4

*Assicurazioni Generali v. Clover*,
    195 F.3d 161 (3d Cir. 1999)...................................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................3, 4

*Bel-Ray Co., Inc. v. Chemrite (PTY) LTD, et al.*,
    181 F.3d 435, 441 (3d Cir. 1999).........................................................15

*Civic Southern Factors Corp. v. Bonat*,
    65 N.J. 329 (1974)..............................................................................9

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,
    709 F.2d 190 (3d Cir. 1983).................................................................12

*Conley v. Gibson*,
    355 U.S. 41 (1957)..............................................................................3

*Copelco Capital Inc. v. Shapiro*,
    331 N.J. Super. 1 (N.J. App. Div. 2000)......................................... 13, 16

*D'Agostino v. Johnson & Johnson*,
    225 N.J. Super. 250 (App. Div. 1988) .................................................10

*D'Agostino v. Maldonado*,
    216 N.J. 168 (2013)........................................................................9, 15

*Danka Funding v. Page, Scrantom, Sprouse, Tucker & Ford*,
    21 F. Supp. 2d 465 (D.N.J. 1998) ................................................. 15, 16

*Day & Zimmermann, Inc. v. Challoner*,
    423 U.S. 3 (1975)...............................................................................16

*Driscoll v. Burlington-Bristol Bridge Co.*,
   10 N.J. Super. 545 (Ch.Div.1950) .......................................................................8

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).............................................................................4

*Frazier v. Se. Pa. Transp. Auth.*,
   785 F.2d 65 (3d Cir. 1986).............................................................................3

*General Engineering Corp. v. Martin Marietta*,
   783 F.2d 352 (3d Cir. 1986).........................................................................16

*Gonzalez v. Wilshire Credit Corp.*,
   207 N.J. 557 (2011)....................................................................................19

*Hoffer v. Infospace.com, Inc.*,
   102 F. Supp. 2d 556 (D.N.J. 2000) ................................................ 13, 15, 16, 17

*Houston Petroleum Co. v. Automotive Products Credit Ass'n*,
   9 N.J. 122 (1952).........................................................................................8

*In re NFL Players' Concussion Injury Litig.*,
   923 F.3d 96 (3d Cir. 2019)............................................................................6

*Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*,
   188 F. Supp. 2d 454 (D.N.J. 2001) ................................................ 10, 11, 12, 18

*Klaxon v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941).....................................................................................16

*Kurzke v. Nissan Motor Corp. in U.S.A.*,
   164 N.J. 159 (2000)......................................................................................9

*Largoza v. FKM Real Estate Holdings, Inc.*,
   474 N.J. Super. 61 (App. Div. 2022) ..............................................................15

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)........................................................................................16

*Mathews v. Rescuecom Corp.*,
   No. 05-4834 (JEI), 2006 U.S. Dist. LEXIS 8608 (D.N.J. Feb. 16, 2006).... 14, 15

*Mazo v. Way*,
    551 F. Supp. 3d 478 (D.N.J. 2021) ........................................................4

*MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*
    65 F. App'x 844 (3d Cir. 2003) .........................................................11

*On Air Ent. Corp. v. Nat'l. Indem. Co.*,
    210 F.3d 146 (3d Cir. 2000) ...............................................................16

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) .................................................................4

*Robeson Indus. Corp. v. Hartford Acc. & Indem. Corp.*,
    178 F.3d 160 (3d Cir. 1999) ...............................................................16

*Shelton v. Rest..com, Inc.*,
    214 N.J. 419 (2013) ...........................................................................19

*Staedler v. Staedler*,
    6 N.J. 380 (1951) .................................................................................9

*Vasquez v. Glassboro Serv. Asso.*,
    83 N.J. 86 (1980) .................................................................................9

*Wilfred MacDonald Inc. v. Cushman, Inc.*,
    256 N.J. Super. 58 (App. Div. 1992) ..................................................12

## STATUTES

28 U.S.C. § 1332(d)(2).............................................................................2

28 U.S.C. § 1441(a) .................................................................................2

Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, *et seq.*...................1

Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*.......................................1, 2

N.J.S.A. § 17:11C-33(b) .........................................................................3

N.J.S.A. 17:11C-2 ................................................................................5, 6

N.J.S.A. 17:11C-3(a)...............................................................................6

iv

N.J.S.A. 17:11C-33 ...................................................................................6, 11

N.J.S.A. 17:11C-36(a) ....................................................................................2

N.J.S.A. 2C:21-19 ..........................................................................................8

N.J.S.A. 31:1-1 ..........................................................................................8, 11

N.J.S.A. 56:12-15 ...........................................................................................7

N.J.S.A. 56:12-17 ........................................................................................3, 7

Regulation Z, 12 C.F.R. § 226, *et seq* .........................................................2

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* .........................................2

Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14, *et seq.* .......................................................................................................1, 2

## OTHER AUTHORITIES

14 *Williston, Contracts* (3 ed. Jaeger 1972), §§ 1628-1629 .....................9

17 *Am.Jur.*2d, *Contracts*, § 155 ...................................................................9

6A *Corbin, Contracts* (1962) §§ 1373-1378 ...............................................9

*Black's Law Dictionary* 374 (9th ed. 2009) ................................................9

## RULES

FED. R. CIV. P. 12(b)(6) ..................................................................................2

FED. R. CIV. P. 8 ............................................................................................3

Fed. R. Civ. P. 8(a)(2) ....................................................................................3

FED. R. CIV. P. 8(d)(1) ...................................................................................3

## 1.   PRELIMINARY STATEMENT

This matter arises from Defendants' violations of the New Jersey Consumer

Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and Truth-in-Consumer Contract,

Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.* committed

against Plaintiff Gafner and the Class members.

In 2016, Plaintiff Gafner entered into an open-end loan agreement with

Defendants (collectively "Oasis"). In executing the loan, Oasis sent Ms. Gafner a

"Consumer Disclosure," "Payment Instructions," a "Credit and Information

Release" and a "Nonrecourse Purchase Agreement." *See* Compl. ¶ 14.

Notwithstanding Defendants' creative misnomers, the documents Oasis sent to Ms.

Gafner executed a loan agreement with an opportunity for subsequent advances. *Id.*

The issue for Oasis is that they failed to secure the licensure necessary to effect

consumer loans in New Jersey before entering into the loan agreement with

Plaintiff Gafner. As per the New Jersey Consumer Finance Licensing Act

("CFLA"), N.J.S.A. 17:11C-1, *et seq.*, Oasis engaged in the "consumer loan

business" without a license to do so and, as such, the purported loan to Plaintiff

was void *ab initio* and Oasis has no right "to collect or receive any principal,

interest or charges . . . ." *See* N.J.S.A. 17:11C-2; N.J.S.A. 17:11C-33(b); *see also*

Compl. ¶¶ 19-25. Moreover, because Oasis's unlicensed status precluded it from

issuing loans and/or charging interest on open-end loans, Oasis's

misrepresentations to the contrary (and related failure to accurately disclose the annual percentage rate of Ms. Gafner's loan) constitute violations of the TCCWNA, the CFA, Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., and Regulation Z, 12 C.F.R. § 226, *et seq*. *See* N.J.S.A. 17:11C-36(a).

Ms. Gafner filed her Class Action Complaint (Docket No. HUD-L-30-23; Trans ID: LCV202364040) in the Superior Court of New Jersey, in the Law Division of Hudson County on January 24, 2023. Pursuant to 28 U.S.C. §§ 1332(d)(2) and 1441(a), Defendants removed the instant action to the United States District Court for the District of New Jersey on February 2, 2023. *See* Notice of Removal (ECF No. 1). Oasis now moves to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6), arguing that "Plaintiff improperly commenced the instant action . . . in New Jersey, in contravention of the Agreements'. . . forum selection clauses . . . Because Plaintiff filed her claims in an improper forum, her claims should be dismissed . . . ." Defs.' Mem. 5-6. However, Defendants fail to appreciate that their argument relies entirely on provisions of a void agreement.[1]

---

[1] N.J.S.A. 17:11C-33(b) states that, if in violation of the CFLA's licensure requirements, "a contract of a loan not invalid for any other reason . . . ***shall be void*** and the lender shall have no right to collect or receive any principal, interest or charges . . . ." *Id.* (emphasis added). Additionally, Plaintiff is entitled to equitable relief for Defendants' violations of the TCCWNA, which includes "the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract." N.J.S.A. 56:12-17.

Like all provisions of the void loan agreement, the forum-selection clause cited by Oasis has been rendered void or otherwise unenforceable. *See* N.J.S.A. § 17:11C-33(b); N.J.S.A. 56:12-17.

Moreover, if the Court determines Oasis's lack of licensure and/or flagrant violations of New Jersey's statutory prohibitions against usury not to be dispositive of the instant Motion, Defendants' Motion still fails because the forum-selection clauses are unenforceable contraventions of New Jersey public policy.

## 2.   ARGUMENT

### 2.1   Legal Standard

The Federal Rules of Civil Procedure (specifically FED. R. CIV. P. 8) apply "minimal burdens on the plaintiff at the pleading stage." *Frazier v. Se. Pa. Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986). Under FED. R. CIV. P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Further, FED. R. CIV. P. 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct." Fundamentally, all the plaintiff is required to plead is fair notice of "what the...claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 78 (1957) (internal quotation marks omitted)).

"When evaluating a Rule 12(b)(6) motion, [the court] must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Mazo v. Way*, 551 F. Supp. 3d 478, 490 (D.N.J. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted)). "A complaint survives dismissal if it contains sufficient factual matter, accepted as true, to state a claim...that is plausible on its face." *Mazo*, 551 F. Supp at 490 (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570 (internal quotation marks omitted)). Defendants Motion fails to show that Plaintiff's Complaint is deficient on its face. Therefore, under the pleading standards articulated in, *inter alia, Twombly* and *Iqbal,* Defendants' Motion fails and must be denied.

## 2.2    The Loan Agreements Are Void and Unenforceable

### 2.2.1    *The Loan Agreements Are Void Pursuant to the New Jersey Consumer Finance Licensing Act and the Truth-in-Consumer Contract, Warranty, and Notice Act*

> "Consumer loan business" means the business of making loans of money, credit, goods or things in action, which are to be used primarily for personal, family or household purposes, in the amount or value of $50,000 or less and charging, contracting for, or receiving a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder, except as authorized by this act and

without first obtaining a license from the commissioner. Any person directly or indirectly engaging in the business of soliciting or taking applications for such loans of $50,000 or less, or in the business of negotiating or arranging or aiding the borrower or lender in procuring or making such loans of $50,000 or less, or in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business.

N.J.S.A. 17:11C-2.

The CFLA defines an "[o]pen-end loan" as a "loan made by a consumer lender pursuant to a written agreement" where the lender "permit[s] the borrower to obtain advances of money from the lender," "where the amount of each advance and permitted interest and charges are debited to the borrower's account and payments . . . are credited to the same account," where interest is computed in the unpaid principal balance, and where the "borrower has the privilege of paying the account in full at any time or . . . in monthly installments of fixed or determinable amounts . . . ." N.J.S.A. 17:11C-2. The agreements purportedly governing Plaintiff's account (ECF No. 12-2) show disbursements of funds advanced to Ms. Gafner, an accounting of interest, fees, and charges to Ms. Gafner's account, and a plan for repayment of the loan. Despite Defendants' assertions that the loans disbursed to Ms. Gafner were actually "Nonrecourse Purchase Agreements," the court in *In re NFL Players' Concussion Injury Litig.* acknowledged that a "non-assignment cash advance agreement . . . could be structured like a loan" and that

the Consumer Financial Protection Bureau has argued that indeed such "agreements are disguised predatory loans." 923 F.3d 96, 111 (3d Cir. 2019).

Plainly, when Defendants entered into the loan agreements with Plaintiff in order to "provide[] Plaintiff with funding while she pursued claims against a third party," Oasis engaged in the consumer loan business as defined by the CFLA. *See* Defs.' Mem. 2; *see also* N.J.S.A. 17:11C-2. The CFLA states that "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3(a). The CFLA also states unequivocally that any consumer lender who violates, *inter alia*, § 17:11C-3 "shall be guilty of a crime in the fourth degree" and that "[a] contract of a loan not invalid for any other reason . . . which constitutes a crime of the fourth degree under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges . . . N.J.S.A. 17:11C-33.

In sum and substance, Defendants failed to acquire a consumer lender license prior to entering into the loan agreement with Plaintiff, which is a fourth-degree crime under the CFLA. Any contract for a loan which constitutes a fourth-degree crime under the CFLA (as is the case here) is void. Therefore, the forum selection cause relied on by Defendants is void and Oasis's Motion to Dismiss fails.

Moreover, Defendants' violations of the CFLA (along with their violations of the TILA and New Jersey's statutory prohibitions against usury) constitute predicate offenses which trigger the remedial protections of the TCCWNA. The TCCWNA broadly prohibits lenders such as Oasis from "enter[ing] into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed." N.J.S.A. 56:12-15.

Under the TCCWNA, Plaintiff has "the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract." N.J.S.A. 56:12-17. Thusly, whether by mechanism of the CFLA or the TCCWNA, the purported loan agreements between Ms. Gafner and Oasis are void and, as a result, Defendants' Motion fails.

### 2.2.2 *The Loan Agreements Violate New Jersey's Prohibition Against Usury and Constitute Unlawful Contracts*

Notwithstanding Defendants' purposely availing themselves of the laws of the State of New Jersey by soliciting transactions with New Jersey consumers, the agreements governing Plaintiff's account contain a choice of law provision which states "**ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS . . . SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN**

**ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY.**"

Defs.' Mem. 3.

Under New Jersey law, "when there is a written contract specifying a rate of

interest, no person shall take above the value of $16.00 for the forbearance of

$100.00 for a year." N.J.S.A. 31:1-1. Although the interest rate is not specifically

stated by the Purchase Agreements, Defendants provided a time-price differential

divided into quarterly segments which shows that the interest rate on Ms. Gafner's

loans, excluding fees and other charges, is closer to 100% per annum than 16%.

*See* p. 2, 5 of the Purchase Agreements attached as Exhibits A, B, and C to

Defendants' Motion (ECF No. 12-2). Even assuming *arguendo* that Oasis is

properly licensed under the CFLA (which, to be clear, they are not), their

agreements with Ms. Gafner are still void as—both civilly and criminally—

usurious violations of public policy and statutory prohibitions. *See* N.J.S.A. 31:1-1;

N.J.S.A. 2C:21-19.

> **[C]ourts in New Jersey have refused to enforce contracts that violate the public policy of the State.** *Houston Petroleum Co. v. Automotive Products Credit Ass'n*, 9 N.J. 122, 130 (1952). No contract can be sustained if it is inconsistent with the public interest or detrimental to the common good. *Driscoll v. Burlington-Bristol Bridge Co.*, 10 N.J. Super. 545, 575 (Ch.Div.1950), mod. 8 N.J. 433 (1952), *cert.* den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952). **Contracts have been declared invalid because they violate statutes**, promote crime, interfere with the administration of justice, encourage divorce, violate public morality, or restrain trade. *See, e.g., Staedler v.*

> *Staedler*, 6 N.J. 380, 389 (1951) (contract to bring suit for divorce or to make no defense to such suit is illegal and void); *see generally* 6A *Corbin, Contracts* (1962) §§ 1373-1378 at 1-27; 14 *Williston, Contracts* (3 ed. Jaeger 1972), §§ 1628-1629 at 2-11; 17 *Am.Jur.*2d, *Contracts*, § 155, *et seq.*

*Vasquez v. Glassboro Serv. Asso.*, 83 N.J. 86, 98-99 (1980) (emphasis added).

As stated by the New Jersey Supreme Court in *D'Agostino v. Maldonado,* "[a] contract may be void because it is technically defective, contrary to public policy, or illegal."; "[a] void contract is [a] contract that is of no legal effect, so that there is really no contract in existence at all." 216 N.J. 168, 194 n.4 (2013) (quoting *Black's Law Dictionary* 374 (9th ed. 2009). Whereas here, the loan agreements constitute clearly usurious and unlawful contracts, they are properly void and "of no legal effect." *Id.* As provisions of void contracts, the forum-selection clauses relied on by Defendants are "not in existence at all," and as a result, Defendants' Motion fails. *Id.*

## 2.3   The Forum-Selection Clauses Are Void and Unenforceable

### 2.3.1   *The Forum-Selection Clauses Are Void by Mechanism of the CFLA, the TCCWNA, and New Jersey Common Law*

"The doctrine of *forum non conveniens* is firmly embedded in the common law of this State." *Kurzke v. Nissan Motor Corp. in U.S.A.*, 164 N.J. 159, 164 (2000) (quoting *Civic Southern Factors Corp. v. Bonat*, 65 N.J. 329, 332 (1974) (internal quotation marks omitted)). "Although phrased in a variety of ways, the

essence of the doctrine is that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate." *D'Agostino v. Johnson & Johnson*, 225 N.J. Super. 250, 259 (App. Div. 1988). Here, Defendants contend that a "forum-selection clause may be enforced through the doctrine of *forum non conveniens*," however, Defendants, a) selectively understate the strong public policy interests the State of New Jersey has in enforcing state-specific consumer protection statutes and, b) misapply the pertinent law to the facts before the Court. *See* Defs.' Mem 6.

Defendants correctly state that a forum selection clause will be invalidated "if the resisting party can show (1) the clause was invalid for such reasons as fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court." *Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454, 458 (D.N.J. 2001); *see* Defs.' Mem. 9. However, Defendants misstate the first prong of the test articulated in *Intermetals Corp.*; Defendants' arguments are premised upon the language of the first prong being 'the [forum-selection] clause was invalid for fraud or overreaching.' The language actually used by the court in *Intermetals Corp.* was "the [forum-selection] clause was invalid for **such reasons**

*as* fraud or overreaching." *Id.* 'Such as' denotes a list of examples, i.e., "fraud or overreaching." Reasons to invalidate the forum-selection clauses in this matter are not strictly limited to fraud or overreach by Oasis. The court's analysis of fraud in the inducement in *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.* cited by Defendants was based strictly on plaintiff MoneyGram's general assertions that defendant's general fraudulent conduct suspended the operation of the pertinent forum-selection clause. *See* 65 F. App'x 844, 847 (3d Cir. 2003). In the instant action, Plaintiff has made no assertion that would limit the scope of the Court's analysis to fraud and/or overreaching.

As explained herein, Plaintiff has already satisfied the first prong of the test articulated in *Intermetals Corp.*; Defendants contracted for a consumer loan without holding a consumer lending license under the CFLA. As such, the loan agreements were void *ab initio*. *See* N.J.S.A. 17:11C-33. Moreover, Defendants violated New Jersey usury laws by forming and executing loan agreements with Plaintiff that provide for interest rates far exceeding State limits. *See* N.J.S.A. 31:1-1. Therefore, whether by statutory mechanism of the CFLA and/or the TCCWNA, or by New Jersey's common law prohibition against State enforcement of unlawful contracts, the loan agreements between Oasis and Ms. Gafner are void.

### 2.3.2   *The Forum-Selection Clauses Serve No Functional Purpose but to Inconvenience Plaintiff*

Defendants purposely availed themselves of the laws of the State of New Jersey by soliciting transactions with New Jersey consumers. The facts underlying Plaintiff's cause of action occurred in New Jersey and involve violations of New Jersey consumer protection statutes and common law. Plaintiff Gafner resides in New Jersey. Moreover, the choice of law provisions included in the loan agreements state that all disputes arising out of the same will be governed by New Jersey law. *See* Defs.' Mem. 3. In sum and substance, the granting of Defendants' Motion would serve no functional purpose beyond inconveniencing Plaintiff to the point of practically depriving her of her day in court, further exacerbating the prejudice to Plaintiff resulting from a clear inequity of bargaining power.

Defendants cite a number of cases in ostensible support of their assertion that "New Jersey courts routinely enforce forum-selection clauses that require Case litigation outside of the state," however, all but one of the cases cited by Defendants involve litigation between domestic and foreign corporations, as opposed to involving an individual consumer of limited means. *See* Defs.' Mem. 12-13; *see also Intermetals Corp.*, 188 F. Supp. 2d; *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983); *Wilfred MacDonald Inc. v. Cushman, Inc.*, 256 N.J. Super. 58, 59 (App. Div. 1992). What constitutes prohibitive inconvenience to a corporation differs from what constitutes prohibitive

inconvenience to a natural person and, as such, the Court's analysis of the inconvenience prong of the *Intermetals* test changes and should be properly tailored to the facts of this matter.

In *Hoffer v. Infospace.com, Inc.*, the lone case cited by Defendants that involves enforcement of a forum-selection clause against a natural person, plaintiff Hoffer was an employee of defendant Infospace.com and Hoffer's employment contract was negotiated and executed in Washington (the jurisdiction chosen by the pertinent forum-selection clause). 102 F. Supp. 2d 556, 561-62 (D.N.J. 2000). The *Hoffer* court went on to say that forum-selection clauses "will not be given effect if they are the result of . . . coercive bargaining power, or if enforcement of the clause would be seriously inconvenient for the trial." *Hoffer*, 102 F. Supp. 2d at 562 (quoting *Copelco Capital Inc. v. Shapiro*, 331 N.J. Super. 1, 4 (N.J. App. Div. 2000) (internal quotation marks omitted)).

The disputes in *Hoffer*, *Intermetals Corp.*, *Coastal Steel Corp.*, and *Wilfred MacDonald Inc.* stemmed from contracts negotiated by commercial entities having equal bargaining power, which starkly contrast the facts in the instant action; the loan agreements between Oasis and Ms. Gafner are adhesion contracts executed between a predatory lender and an individual consumer in desperate need of resources. Defendants' assertion that the parties in this matter had equal bargaining power is simply inconsistent with reality. Moreover (and again in contrast to the

cases cited by Defendants), Ms. Gafner has never availed herself of the laws of Cook County, Illinois; she has never conducted business there, she has never solicited business there, she has never been there. Simply, enforcement of the forum-selection clauses in this matter would be an imposition of prohibitive inconvenience with no practical benefit.

Defendants have also argued that rendering the loan agreements void by mechanism of New Jersey law, whether by statutory or common law, would be proceeding in a "last-things-first matter," however the cases cited by defendant in ostensible support of this position are again distinguishable from the instant action. *See* Defs.' Mem. 14. Defendants selectively quote *Mathews v. Rescuecom Corp.*, and argue that a "party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract." Defs.' Mem. 14; *see Mathews v. Rescuecom Corp.,* No. 05-4834 (JEI), 2006 U.S. Dist. LEXIS 8608, at *16 n.8 (D.N.J. Feb. 16, 2006). However, the entire quote, in context, reads:

> [W]hile Plaintiff contends that Defendants fraudulently induced him to enter into the Agreements, he has not alleged that the forum selection provisions were fraudulently included in the contracts. [A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract . . . [but] must show that the clause itself was the product of fraud or coercion.

*Id.* (quoting *Barbuto v. Medicine Shoppe,* 166 F. Supp. 2d 341, 346 (W.D. Pa. 2001) (internal citations and quotation marks omitted)).

The analyses by the courts in *Mathews* and *Largoza* were based on the respective plaintiffs' general allegations that the contracts at issue came about as a result of fraud; the courts therefore reasoned that to render the forum-selection clauses unenforceable, plaintiffs would have to show that the forum-selection clauses were fraudulently induced and that alleging the entire contracts to have been fraudulently obtained is insufficient. *See Largoza v. FKM Real Estate Holdings, Inc.*, 474 N.J. Super. 61, 76-77 (App. Div. 2022); *Mathews v. Rescuecom Corp.*, No. 05-4834 (JEI), 2006 U.S. Dist. LEXIS 8608, at *16 n.8 (D.N.J. Feb. 16, 2006). However, as explained herein, Plaintiff has made no assertion that would limit the scope of the Court's analysis to fraud. In fact, Plaintiff has properly stated that the loan agreements are void and "of no legal effect" due to the facts that, a) Oasis lacked the legal authority to enter into a contract for a consumer loan, and b) attempted to form an unlawful contract in contravention of axiomatic doctrines against doing so. *See* Compl. ¶¶ 14-25; *see also D'Agostino*, 216 N.J. at 194 n.4.

"The [Third] Circuit has noted that the construction of a contract is usually a matter of State, not Federal, common law." *Hoffer*, 102 F. Supp. 2d at 562; *see Bel-Ray Co., Inc. v. Chemrite (PTY) LTD, et al.*, 181 F.3d 435, 441 (3d Cir. 1999); *Danka Funding v. Page, Scrantom, Sprouse, Tucker & Ford*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *General Engineering Corp. v. Martin Marietta*, 783 F.2d

352, 356 (3d Cir. 1986)). "The language of the Forum Selection Clause itself, therefore, is not authority for what law to apply. Rather, a Federal court sitting in diversity must utilize the choice of law rules of the forum State - - New Jersey." *Hoffer*, 102 F. Supp. 2d at 562 (D.N.J. 2000); *see Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3 (1975); *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *On Air Ent. Corp. v. Nat'l. Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000); *Assicurazioni Generali v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (stating that a "District Court in … [a] diversity action [is] obligated to apply the forum's … choice of law rules in resolving the parties' dispute…."); *Robeson Indus. Corp. v. Hartford Acc. & Indem. Corp.*, 178 F.3d 160, 164 (3d Cir. 1999); *Danka Funding*, 21 F. Supp. 2d at 469.

The court in *Hoffman* found itself similarly situated to this Court:

> In the instant matter, no actual conflict exists with respect to the standard for consent to forum selection clauses in contracts; the courts of New Jersey and Washington are in accord with the law as set out by the United States Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972), and its progeny. Compare Copelco Capital Inc. v. Shapiro, 331 N.J. Super. 1, 4, 750 A.2d 773 (N.J. App. Div. 2000) (stating that "forum selection clauses are generally enforced in New Jersey." "***Nevertheless, such provisions will not be given effect if they are the result of*** 'fraud or ***coercive bargaining power***,' ***or if enforcement of the clause would "be seriously inconvenient for the trial***.")

*Hoffer*, 102 F. Supp. at 562 (emphasis added).

The facts in this matter clearly show a vast inequity of bargaining power between Ms. Gafner and Oasis. Ms. Gafner was presented with usurious terms (by an unlicensed lender) on a take-it-or-leave-it basis; to argue otherwise would be a willful obfuscation of verifiable facts. The same facts clearly show that requiring Ms. Gafner to litigate this matter in the Circuit Court of Cook County, Illinois would be prohibitively inconvenient for Ms. Gafner (to say nothing of the implications of applying the procedural law of the State of Illinois rather than the procedural law of the federal District of New Jersey), while requiring Oasis to remain in this Court would be business as usual for Defendants. On the one hand, we have an individual, natural person operating in her personal capacity, having never availed herself of Illinois's laws, nor set foot in the state. Plaintiff is not a corporation soliciting consumers in Cook County. On the other hand, we have several entities which comprise a nationally operating corporation who has repeatedly solicited unlawful loan contracts with New Jersey consumers as part of ongoing business practices.

The applicable case law requires consideration as to whether "enforcement of the clause would be seriously inconvenient for the trial." *Hoffer*, 102 F. Supp. at 562 (quoting *Copelco Capital Inc.*, 331 N.J. Super. at 4 (internal quotation marks omitted)). This cause of action arose in New Jersey because of Defendants' willful commercial presence in New Jersey. Plaintiff and, ostensibly, all of Plaintiff's

speculative witnesses reside in New Jersey; requiring Plaintiff to try this matter in Illinois would be prohibitively expensive and practically deprive Plaintiff of her "day in court." *Intermetals Corp.*, 188 F. Supp. 2d at 458. Thus, Defendants' Motion must be denied.

Finally, the Court must inquire as to the practical purpose of the forum-selection clauses and the effects of their speculative enforcement. Defendants argue that this Court, applying the substantive law of this State, should dismiss the instant action and force Plaintiff to refile her Complaint in the Circuit Court of Cook County, Illinois—who would then be obligated to apply the substantive law of this State. Indeed, enforcement of the forum-selection clauses would *only* serve to prejudice Plaintiff and waste judicial resources. Thus, Defendant's Motion fails.

### 2.3.3  *The Forum-Selection Clauses Are Unenforceable Contraventions of New Jersey Public Policy*

As stated above, Defendants' Motion argues for a clear and unnecessary waste of judicial resources. Because judicial economy is a significant public policy concern, the Court must carefully consider the needless expending of judicial resources when Defendants' desired result would be the application of the same substantive law in a different, foreign forum. *See* Defs.' Mem. 3. Further, New Jersey has a clear interest in enforcing state-specific consumer protection statutes *in this State*. The CFA and the TCCWNA are remedial statutes meant to be construed broadly to effectuate their purpose. *See Shelton v. Rest..com, Inc.*, 214

Page **18** of **20**

N.J. 419, 442 (2013); *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011).

Perhaps more importantly, the CFA and the TCCWNA—along with the CFLA and

New Jersey's usury laws—and the related enforcement of the same have a direct

and immediate impact on New Jersey consumers, New Jersey businesses, and New

Jersey's economy.

Only the State of New Jersey can maintain the prevailing public interests of

preservation and regulation of New Jersey's economy. Indeed, Cook County,

Illinois has no interest or concern in New Jersey's economy. Thusly, New Jersey

has a strong public policy concern in adjudicating matters that have a direct effect

on the maintenance and regulation of New Jersey's economy—as well as a direct

effect on this jurisdiction's precedential jurisprudence—in the State of New Jersey.

As a result, Defendants' Motion fails.

### 2.3.4   *Defendants Waived Any Forum Selection Clauses*

Defendants asks this Court to enforce a forum selection clause compelling

adjudication in an Illinois state court; however, by removing this action to this

Court, Defendants contend that this Court has jurisdiction. Defendants can't have it

both ways: either this Court has jurisdiction or a Cook County, Illinois court has

jurisdiction. Defendants could have raised this issue before the state court, but

voluntarily opted for this Court's jurisdiction under CAFA instead of seeking

specific performance of the forum selection clause contained in its adhesion

contract. Waiver is the voluntary and intentional relinquishment of a known right. *Knorr v. Smeal*, 178 N.J. 169, 177 (2003). The Defendants are sophisticated entities that drafted the agreement they entered into with Plaintiff Gafner; they knew that there was a forum selection clause. With knowledge of the clause and that it could raise it before the state court, the Defendants chose to remove this action to this Court rather than seek to enforce the clause before the state court. Defendants waived the forum selection clauses they now ask this Court to enforce. As a result, Defendants' Motion must be denied.

### 3.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

KIM LAW FIRM LLC

*s/Mark Jensen*
Mark Jensen

Dated: April 24, 2023          *Attorneys for Plaintiff*

Kaitlyn E. Stone (NJ ID No. 064892013)
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

*Attorneys for Oasis Legal Finance, LLC,
Oasis Legal Finance Operating
Company, LLC, Oasis Legal Finance
Holding Company, LLC, and OFLC,
LLC*

**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SHANA GAFNER, on behalf of herself and those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 2:23-cv-00581-JXN-AME |
| OASIS LEGAL FINANCE, LLC d/b/a OASIS FINANCIAL; OFLC, LLC; OASIS STRUCTURED SETTLEMENTS; OASIS FINANCIAL HOLDING COMPANY, LLC; OASIS FINANCIAL OPERATING COMPANY, LLC, and JOHN DOES 1 to 10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................2

I.    The Agreements' Supposed Illegality Has No Bearing on Whether the Forum-Selection Clause Itself Is Independently Enforceable. ........................2

II.   Plaintiff Has Not Met Her Heavy Burden of Showing that the Agreements' Mandatory Forum-Selection Clause Is Unenforceable. ............3

     A.    Plaintiff Has Not Alleged that the Forum-Selection Clause Was Included in the Agreements through Fraud or Overreaching. ..............4

     B.    Plaintiff Has Not Shown that Litigating in Cook County, Illinois, Would Be "So Gravely Inconvenient" that Having To File Suit There Would Be Unreasonable and Unjust. ..........................4

     C.    Plaintiff Has Identified No Strong New Jersey Public Policy that Enforcing the Forum-Selection Clause Would Contravene..........7

III.   The Oasis Parties Did Not Waive Their Right To Enforce the Forum-Selection Clause by Removing This Case to Federal Court. ........................10

CONCLUSION ................................................................................................11

CERTIFICATE OF SERVICE ........................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*,
571 U.S. 49 (2013)........................................................................................1, 2, 6

*Carnival Cruise Lines v. Shute*,
499 U.S. 585 (1991)................................................................................................5

*Fountain v. Oasis Legal Finance, LLC*,
86 F. Supp. 3d 1037 (D. Minn. 2015).................................................................3, 9

*Greenberg v. Giannini*,
140 F.2d 550 (2d Cir. 1944) (L. Hand, J.) ............................................................10

*Hage v. American Board of Obstetrics & Gynecology*,
No. CV 19-21198, 2020 WL 3056442 (D.N.J. June 9, 2020)................................8

*Jun Zhang v. Gain Capital Holdings, Inc.*,
No. CV 20-09426, 2021 WL 2103233 (D.N.J. May 25, 2021)..............................6

*Kim v. M&T Bank*,
No. CV 17-11810, 2018 WL 4094839 (D.N.J. Aug. 28, 2018) ............................6

*Kostelac v. Allianz Global Corporate & Specialty AG*,
517 F. App'x 670 (11th Cir. 2013) ......................................................................10

*Kowalski v. YellowPages.com, LLC*,
No. CIV.A. 09-2382, 2010 WL 3323749 (D.N.J. Aug. 18, 2010)....................7, 8

*Lambert v. Kysar*,
983 F.2d 1110 (1st Cir. 1993)...............................................................................11

*Mark IV Transportation & Logistics, Inc. v. National Independent Contractor Association, Inc.*,
No. CV 13-02614, 2014 WL 69890 (D.N.J. Jan. 9, 2014)....................................8

*In re Mcgraw-Hill Global Education Holdings LLC*,
909 F.3d 48 (3d Cir. 2018) ....................................................................................1

*Muzumadar v. Wellness International Network, Ltd.*,
   438 F.3d 759 (7th Cir. 2006) ...............................................................3

*National Micrographics Systems, Inc. v. Canon U.S.A., Inc.*,
   825 F. Supp. 671 (D.N.J. 1993) ..........................................................4

*Palmer v. Advent Product Development, Inc.*,
   No. CV 08-2777 (PGS), 2009 WL 10689699 (D.N.J. Mar. 31, 2009) ...........5, 6

*Pappalardo v. Advent Product Development, Inc.*,
   No. CIV.A. 06-4697, 2007 WL 1296652 (D.N.J. Apr. 30, 2007).......................6

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998) .................................................................11

*Register v. GNC Holdings, Inc.*,
   No. CV 17-1320, 2017 WL 4675386 (D.N.J. Oct. 17, 2017) ............................7

*Rucker v. Oasis Legal Finance, L.L.C.*,
   632 F.3d 1231 (11th Cir. 2011) ..................................................2, 8, 9

*Shell v. R.W. Sturge, Ltd.*,
   55 F.3d 1227 (6th Cir. 1995) ..............................................................2

*Smith v. Oasis Legal Fin., LLC*,
   No. 8:17-CV-2163-T-33, 2017 WL 4922271 (M.D. Fla. Oct. 31, 2017) ...........9

*Spectracom, Inc. v. Tyco International, Inc.*,
   124 F. App'x 75 (3d Cir. 2004) .......................................................11

*Vercammen v. LinkedIn Corporation*,
   No. A-0188-20, 2022 WL 221388 (App. Div. Jan. 26, 2022)..........................8

*Wilfred MacDonald Inc. v. Cushman Inc.*,
   256 N.J. Super. 58 (App. Div. 1992) ................................................8

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ...............................................11

Federal Rule of Civil Procedure 12(b)(3) ...............................................11

## INTRODUCTION

The driving force behind Plaintiff's Opposition to the Oasis Parties' Motion is her contention that because the Agreements themselves are void *ab initio*, their forum-selection clause is void and unenforceable. This argument puts the proverbial cart before the horse. No court has determined that Oasis Financial's non-recourse funding agreements with Plaintiff are unlawful, and that question is not presently before the Court. The question posed by the Oasis Parties' Motion is ***where*** Plaintiff must adjudicate her claims. The answer—as set forth in the Agreements' mandatory forum-selection clause—is the Circuit Court of Cook County, Illinois. To defeat this presumptively valid contract term, Plaintiff must demonstrate that the clause itself is unenforceable. Plaintiff cannot meet that burden by simply ignoring the body of federal law supporting the Oasis Parties' Motion, as Plaintiff has done here.[1]

The United States Supreme Court set definitive guidance regarding the enforceability of forum-selection clauses in *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013). Instead of addressing *Atlantic Marine*, Plaintiff ignores the Supreme Court's

---

[1] Plaintiff's suggestion that state law governs the enforceability of a forum selection clause, Pl.'s Opp., pp. 15-16, is incorrect. "Federal law controls the question of whether to enforce a forum selection clause." *In re Mcgraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). The enforceability of the Agreements' forum-selection clause, not the scope of the forum-selection clause, is what's at issue here. Thus, this Court's analysis is guided by *Atlantic Marine* and its progeny, not New Jersey state law.

command that federal courts should enforce forum-selection clauses except in the most "extraordinary" of circumstances. *Id.* at 62-63. This case presents no "extraordinary" circumstance that would justify trying this case outside of the exclusive, bargained-for forum: the Circuit Court of Cook County, Illinois. In fact, every argument raised by Plaintiff in her response has been repeatedly rejected by Courts in this Circuit and in jurisdictions across the country. Because Plaintiff cannot meet her heavy burden of showing that the Agreements' forum-selection clause is unenforceable, her Complaint must be dismissed.

## ARGUMENT

### I.     The Agreements' Supposed Illegality Has No Bearing on Whether the Forum-Selection Clause Itself Is Independently Enforceable.

Plaintiff's principal argument in opposition to the Oasis Parties' Motion is that the Agreements' forum-selection clause is void and unenforceable because the Agreements themselves are void and unenforceable. This is a non-starter. Courts addressing this exact argument have repeatedly rejected it outright, including in cases involving the same non-recourse funding agreements at issue here. *See, e.g.*, *Rucker v. Oasis Legal Finance, L.L.C.*, 632 F.3d 1231, 1237-38 (11th Cir. 2011) (rejecting argument that "the forum selection clause cannot be given effect because it is included within a contract that is void as a matter of [Alabama] law"); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1232 (6th Cir. 1995) (rejecting contention that district court erred in failing to determine whether the underlying contract was void

2

before determining the enforceability of the forum-selection clause); *Fountain v. Oasis Legal Finance, LLC*, 86 F. Supp. 3d 1037, 1041, 1044 (D. Minn. 2015) (holding that the forum-selection clause in Oasis Financial's agreements were enforceable despite plaintiffs' contention that the agreements constituted "illegal commitments for gambling"). One court even described Plaintiff's argument as "absurd[]":

> Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable as against public policy—i.e., they set out a pyramid scheme— the forum selection clauses are also void. The logical conclusion of the argument would be that the federal courts in Illinois would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if the courts in Illinois determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to Texas—for what? A determination as to whether the contracts are void?

*Muzumadar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006).

Plaintiff has not directed the Court to any case in which the validity of a contract as a whole was determined prior to making a determination regarding the enforceability of the forum-selection clause; nor can she. That is simply not the law.

## II.    Plaintiff Has Not Met Her Heavy Burden of Showing that the Agreements' Mandatory Forum-Selection Clause Is Unenforceable.

Plaintiff's further attempts to overcome the presumptive validity of the Agreements' forum-selection clause all fail as well.

### A.   Plaintiff Has Not Alleged that the Forum-Selection Clause Was Included in the Agreements through Fraud or Overreaching.

As set forth above, Plaintiff's assertion that the Agreements as a whole are void, illegal loans has no bearing on whether the forum-selection clause *itself* was obtained through fraud, overreaching, or other unconscionable means. Neither Plaintiff's Complaint nor Plaintiff's Opposition offers any support for the conclusion that the forum-selection clause *itself* was included in the Agreements through some deceptive or unconscionable means. Accordingly, the first prong of her argument is meritless. *See Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 676 (D.N.J. 1993) (rejecting plaintiff's attempt to use fraud allegations as an "escape hatch" where plaintiff had not alleged "that the forum selection clause itself was included as a by-product of fraud or coercion").

### B.   Plaintiff Has Not Shown that Litigating in Cook County, Illinois, Would Be "So Gravely Inconvenient" that Having To File Suit There Would Be Unreasonable and Unjust.

In further support of her attempt to invalidate the Agreements' forum-selection clause, Plaintiff argues, in conclusory fashion, that "enforcement of the forum-selection clauses in this matter would be an imposition of prohibitive inconvenience with no practical benefit," Pl.'s Opp., p. 14, and that "granting [] Defendants' Motion would serve no functional purpose beyond inconveniencing

Plaintiff to the point of practically depriving her of her day in court," *id.* at p. 12.[2]

But beyond Plaintiff's assumption that she and her "speculative witnesses reside in New Jersey" and her naked assertion that "to try this matter in Illinois would be prohibitively expensive," *id.* at pp. 17-18, Plaintiff offers no supporting factual allegations for her claim that the enforcement of the forum-selection clause would impose an impermissible inconvenience. This Court should not invalidate the Agreements' forum-selection clause based solely on these "blanket assertions." *Palmer v. Advent Prod. Dev., Inc.*, No. CV 08-2777 (PGS), 2009 WL 10689699, at *3 (D.N.J. Mar. 31, 2009) (enforcing forum-selection clause where plaintiff "fail[ed] to demonstrate why South Carolina will be so inconvenient").

Without factual allegations to support her argument that trial in Illinois would be inconvenient, Plaintiff resorts to arguing that her Agreements with Oasis Financial are "adhesion contracts" offered "on a take-it-or-leave-it basis." Pl.'s Opp., pp. 13, 17. Even if Oasis Financial's Agreements were contracts of adhesion—and they are not—this argument would also fail. Both the Supreme Court and courts in this Circuit have squarely rejected the claim that forum-selection clauses in contracts of adhesion are unenforceable. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585,

---

[2] Pursuant to the Court's March 17, 2023 Text Order, ECF No. 20, Plaintiff served, but did not file, her Opposition to the Oasis Parties' Motion. Accordingly, citations to Plaintiff's Opposition are denoted by "Pl.'s Opp." and the page number(s). As instructed, the Oasis Parties will file all motion papers within seven days of service of this Reply. See ECF No. 20.

593 (1991) (rejecting appellate court's determination that "a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining"); *Palmer*, 2009 WL 10689699, at *3 (observing that "forum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and absence of negotiations over the clause"); *Pappalardo v. Advent Prod. Dev., Inc.*, No. CIV.A. 06-4697, 2007 WL 1296652, at *2-3 (D.N.J. Apr. 30, 2007) (rejecting argument that a forum-selection clause in alleged "contract of adhesion" was "unenforceable 'legalese' because the Plaintiffs are 'working class men,' who d[id] not understand its terms"); *see also Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

Plaintiff's argument that the forum-selection clause is inconvenient because she is "an individual, natural person" and a "consumer," Pl.'s Opp., p. 17, 13, is equally unavailing. Courts applying New Jersey law consistently enforce forum-selection clauses in cases brought by "natural persons" alleging NJCFA violations against corporations. *See, e.g.*, *Jun Zhang v. Gain Cap. Holdings, Inc.*, No. CV 20-09426, 2021 WL 2103233, at *4-7 (D.N.J. May 25, 2021) (enforcing forum-selection clause in "clickwrap" agreement for online trading platform brought by user alleging consumer fraud on behalf of himself and a putative class); *Kim v. M&T*

*Bank*, No. CV 17-11810, 2018 WL 4094839, at *5-6 (D.N.J. Aug. 28, 2018) (rejecting plaintiff's argument that forum-selection clause in loan agreement was invalid and unenforceable and dismissing class action consumer fraud case); *Register v. GNC Holdings, Inc.*, No. CV 17-1320, 2017 WL 4675386, at *2 (D.N.J. Oct. 17, 2017) (upholding forum-selection clause located in membership loyalty card's terms and conditions in class action consumer fraud case); *Kowalski v. YellowPages.com, LLC*, No. CIV.A. 09-2382, 2010 WL 3323749, at *4 (D.N.J. Aug. 18, 2010), report and recommendation adopted, No. CIV.A. 09-2382, 2010 WL 3810156 (D.N.J. Sept. 22, 2010) (enforcing forum-selection clause located in the terms and conditions of contract between advertiser and consumer alleging consumer fraud).

Finally, Plaintiff argues that enforcing the forum-selection clause here would be inconvenient because she "has never availed herself of the laws of Cook County, Illinois." Pl.'s Opp., p. 14 (noting that "she has never conducted business," "solicited business," or traveled to Illinois). But purposeful availment, a concept relevant to personal jurisdiction, is not applicable here.

### C.  Plaintiff Has Identified No Strong New Jersey Public Policy that Enforcing the Forum-Selection Clause Would Contravene.

Contrary to Plaintiff's assertion, no persuasive public policy concern counsels against the enforcement of the Agreements' forum-selection clause or trumps New Jersey's strong policy in favor of enforcing contractually bargained-for forum-

selection clauses. *See Kowalski*, 2010 WL 3323749, at *5 ("New Jersey has a policy that favors the enforcement of forum selection clauses.").

Plaintiff's public policy argument focuses on New Jersey's "clear interest in enforcing state-specific consumer protection statutes *in this State*." Pl's Opp., p. 18 (emphasis in original). This argument "ignores that fact that the Illinois court hearing this case will apply [New Jersey] law, and must therefore give proper deference to the [New Jersey] precedent plaintiffs provide." *Rucker*, 632 F.3d at 1237. Indeed, New Jersey courts have explicitly rejected "the premise that only New Jersey courts are equipped to properly interpret and apply the [Consumer Fraud] Act and that to allow other state courts to do so would result in diverse and inconsistent applications." *Wilfred MacDonald Inc. v. Cushman Inc.*, 256 N.J. Super. 58, 65 (App. Div. 1992); *see also Hage v. Am. Bd. of Obstetrics & Gynecology*, No. CV 19-21198, 2020 WL 3056442, at *7 (D.N.J. June 9, 2020) ("The fact that Plaintiff brings his claim under New Jersey law does not supersede New Jersey's preference to enforce forum-selection clauses."); *Mark IV Transp. & Logistics, Inc. v. Nat'l Indep. Contractor Ass'n, Inc.*, No. CV 13-02614, 2014 WL 69890, at *3 (D.N.J. Jan. 9, 2014) ("The argument that public policy favors deciding questions under New Jersey law at home is without merit given that New Jersey law generally supports the validity of forum selection clauses."); *see also, e.g.*, *Vercammen v. LinkedIn Corp.*, No. A-0188-20, 2022 WL 221388, at *4 (App. Div. Jan. 26, 2022) (finding

no public policy reason to not apply the forum-selection clause in an online user agreement in case alleging consumer fraud).

In support of her public policy argument, Plaintiff also asserts that "Illinois has no interest or concern in New Jersey's economy." Pl.'s Opp., p. 19. But Illinois certainly has an interest in regulating and deterring the alleged wrongful conduct of its own businesses.

Plaintiff also unsuccessfully argues that enforcing the forum-selection clause would contravene the "significant public policy concern" of "judicial economy" because applying New Jersey law "in a different, foreign forum" would be "a clear and unnecessary waste of judicial resources." Pl.'s Opp., p. 18. Numerous courts in other jurisdictions have rejected the her suggestion that Cook County courts are incapable of understanding and applying foreign law and have upheld forum-selection clauses mandating a Cook County, Illinois forum—including the identical forum-selection clause at issue here. *See, e.g.*, *Rucker*, 632 F.3d at 1238 (enforcing Cook County forum-selection clause in non-recourse funding agreements governed by Alabama law); *Smith v. Oasis Legal Fin., LLC*, No. 8:17-CV-2163-T-33, 2017 WL 4922271, at *5 (M.D. Fla. Oct. 31, 2017) (giving no weight to plaintiff's "apparent concern that an Illinois judge has no interest in correctly deciding a matter of Florida law"); *Fountain*, 86 F. Supp. 3d at 1043-46 (enforcing Cook County forum-selection clause in purchase agreements governed by Minnesota law).

Because none of the three factors that Courts in the Third Circuit consider when evaluating forum-selection clauses supports Plaintiffs' arguments, her Complaint should be dismissed, without prejudice, so that she may refile her case in the contractually-mandated forum.

### III.   The Oasis Parties Did Not Waive Their Right To Enforce the Forum-Selection Clause by Removing This Case to Federal Court.

Plaintiff's last-ditch argument, that the Oasis Parties somehow abandoned their right to enforce the Agreements' forum-selection clause by invoking the Court's jurisdiction under CAFA and removing this case to federal court, must also be rejected.

Under well-settled law, a defendant who removes a case to federal court on the basis of diversity jurisdiction does ***not*** waive the defense of improper venue as to the underlying state court action:

> When a defendant removes an action from a state court in which it has been sued, he consents to nothing and "waives" nothing; he is exercising a privilege unconditionally conferred by statute, and, since the district court to which he must remove is fixed by law, he has no choice, without which, there can be no "waiver."

*Greenberg v. Giannini*, 140 F.2d 550, 553 (2d Cir. 1944) (L. Hand, J.). Thus, courts that have addressed this issue have squarely rejected the proposition that the removal of an action from an improper state forum waives a defendant's right to enforce a contractual forum-selection clause. *See, e.g.*, *Kostelac v. Allianz Global Corporate & Specialty AG*, 517 F. App'x 670, 674 n.6 (11th Cir. 2013) ("The removal of an

10

action from state to federal court does not waive any Rule 12(b) defenses, including seeking a Rule 12(b)(3) dismissal based on a forum-selection clause."); *Spectracom, Inc. v. Tyco Int'l, Inc.*, 124 F. App'x 75, 77 (3d Cir. 2004) ("[T]he filing of a removal petition in a diversity action does not constitute a waiver" of a contractual forum-selection clause.); *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) ("A party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action."); *Lambert v. Kysar*, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993) ("It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue.").

Simply put, the Oasis Parties' election to remove this case to the United States District Court for the District of New Jersey has no impact whatsoever on the validity and enforceability of the Agreements' forum-selection clause.

## CONCLUSION

Plaintiff cannot meet her heavy burden of establishing that the Agreements' forum-selection clause was a result of fraud or overreaching or that its enforcement would result in a grave injustice or violation of a strong New Jersey public policy. This Court should therefore enforce the Agreements' forum-selection clause and dismiss her Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  May 8, 2023     Respectfully submitted,

*/s/ Kaitlyn E. Stone*
Kaitlyn E. Stone
BARNES & THORNBURG LLP
67 East Park Place, Suite 500
Morristown, NJ 07960
Tel. (973) 755-6101
Fax. (973) 775-6102
kaitlyn.stone@btlaw.com

Christine E. Skoczylas (*Admitted Pro Hac Vice*)
ARDC No. 6293811
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Tel.  (312) 214-5613
Fax.  (312) 759-5646
Christine.skoczylas@btlaw.com

*Attorneys for Oasis Legal Finance, LLC, Oasis Legal Finance Operating Company, LLC, Oasis Legal Finance Holding Company, LLC, and OFLC, LLC*

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.


*/s/ Kaitlyn E. Stone*